Lester L. TATUM et al., Appellants,

v.

H. W. BLACKSTOCK et al., Appellees.

No. 4561.

Court of Civil Appeals of Texas.

Waco.

July 27, 1967.

Rehearing Denied Aug. 24, 1967.

Mills, Shirley, McMicken & Eckel, Preston Shirley, Galveston, for appellants.

Nowlin Randolph, Houston, Graves, Dougherty, Gee, Hearon, Moody & Garwood, Robert J. Hearon, Jr., Austin, for appellees.

WILSON, Justice.

## OPINION

Two appeals from judgment in a non-jury trial of five consolidated suits are presented. One of these appeals is by North Clear Lake Development Corporation, (successor in interest to Tatum) in which reversal of an adverse trespass to try title judgment is sought. We reverse and render judgment in this case. The other appeal is by landowners who will be referred to as the "Blackstock group", who ask reversal of judgment denying them damages and an injunction sought because of the alleged violation of claimed riparian rights. We affirm this portion of the judgment. Findings and conclusions were filed. We will consider the appeals separately.

The matter has been incredibly complicated by a record of over 2000 pages, over 200 exhibits, and several hundred pages of briefs presenting 180 points, cross points and counter points. We have attempted to cut through these (and the accompanying impediments of recriminatory material) to the controlling contentions.

The land over which the principal controversy exists is a tract of about .68 acres (which the members of the Blackstock group say is a part of their lots, and which Clear Lake contends is a strip on the back side of the Blackstock group's lots), shown as a dark area, which we call area "A" on the appended map. The cross-hatched area northwest of it, variously referred to as "tidal flats," "peninsula" or "island," we designate area "B". Before 1951 it was attached or contiguous to area A and the

other land subdivided as "El Lago Estates". In 1951 Dr. Harris (the common source) dredged a channel 30 feet wide along the dotted line between areas A and B.

## FINDINGS AND CONCLUSIONS

We summarize the material findings of fact: The State of Coahuila and Texas delivered a grant of all the property involved in 1832, at which time area B was upland. It is upland (and not lake bottom) now. In 1949 Dr. Harris subdivided El Lago Estates, and the description of lots in each of the deeds from him, including those under which the Blackstock group claims, were "solely by reference" to a subdivision plat, and "none of these lots, by description as contained in the deeds, extended to Taylor Bayou or Taylor Lake." As to area A between the lots of the Blackstock group and the channel dredged by Dr. Harris, "while not included within the descriptions as contained in any deed, the statements, conduct, acts and representations" of Dr. Harris to their predecessors in title "amount to an agreed boundary line extending the back line of said lots down to the edge of the man-made channel."

Further findings were: A 1960 deed from Dr. Harris to North Clear Lake's grantor conveying other land in the vicinity, specifically excluded area A. In 1962 Harris executed a correction deed "attempting to add" area A to the land described in the 1960 deed. The court concluded the correction deed "was without consideration and is void" as to area A.) Dr. Harris "represented to those who purchased from him the properties now owned by" members of the Blackstock group that the boundaries of their respective properties included the land in area A. These representations were made "at or before the sales of said properties, and as an inducement to bring about such sales." Dr. Harris granted, for a valuable consideration, to all purchasers of lots 20, 21, 22, 24, 25 and 26, Section one, El Lago Estates, "the free and unrestricted right to use" area A at all times and for all purposes, and represented, as a part of the consideration, to purchasers (of all except lot 21) that they had "the unrestricted right of access to Taylor Lake and Taylor Bayou." Harris and those under whom the

Blackstock group claim, by a series of agreements made at or about the times Harris sold the lots, "fixed an agreed boundary (the dredged channel), which includes" area A within their properties, the boundary being the channel "as to the back line of lots 20, 21, 22, 24, 25 and 26."

The court concluded that no basis for injunctive relief or damages was shown; that North Clear Lake Development Corporation is estopped to claim area A; that each owner of the enumerated lots "has a perpetual easement" across that portion of area A adjacent to his property; and that all parties are held to the channel as an agreed boundary. Judgment was that North Clear Lake take nothing in its trespass to try title action, and the Blackstock group's prayer for damages and application for injunction were denied.

## THE TRESPASS TO TRY TITLE APPEAL

Appellant North Clear Lake Development Corporation, under the court's findings, which are unassailed by appellees, established that a grant was made to all the land involved in this action, including area A, from the sovereign, the State of Coahuila and Texas. Dr. Harris was stipulated to be the common source of title. Although appellees appear to attack appellants' "chain of title," it was of course unnecessary for appellants to deraign title beyond the common source. Rule 798, Texas Rules of Civil Procedure; Burns v. Goff, 79 Tex. 236, 14 S.W. 1009.

The trial court's findings are that deeds from the common source to appellees, the Blackstock group, did not include area A; and that in 1832 the entire peninsula or island, including area A, was upland, and included in the grant from the sovereign. These, and the other findings, however, do not establish a prima facie title in appellant, North Clear Lake Development Corporation. It had the burden of deraigning title from the common source. This it attempted to do by the 1962 correction deed to its

predecessor in title (the 1960 deed from Harris to that grantee having expressly excluded area A). The trial court determined that the correction deed was "without consideration, and is void."

■ Appellants' brief contains a 60th point asserting the court erred in making this conclusion, but the point is not briefed, and we are thereby given no basis for holding the conclusion was erroneous. Appellee, on the other hand, gives us no basis for sustaining it. If the "correction" deed is void as to appellees, appellant has failed to deraign title from the common source, for this is its only claim to record title. Appellees do not rely on its invalidity in their brief. We find no basis in the record for concluding the correction deed is void. It was not void for want of consideration, if this is the ground of the conclusion. The consideration for a correction deed is the correction. It is a sufficient consideration. 26 C.J.S. Deeds § 31. Appellees imply it was held by the trial court to be void because the description "conflicts" with the original deed. The "conflict" is obviously the correction.

■■ The correction deed, then, sufficiently meets the requirements of deraigning superior title to appellant from the common source and entitles appellant to judgment unless the rights of appellees or their predecessors in title intervened. The trial court determined that the deeds from Harris to the enumerated lots did not convey any part of area A because the description did not include it. This finding is sustained by the record.

Appellees say the take-nothing judgment rests on "estoppel, easement and agreed boundary."

■ That defendant has an easement over the servient estate is not a ground for denying appellant recovery in trespass to try title. Hays v. Texas & P. Ry. Co., 62 Tex. 397; Hollan v. State, Tex.Civ.App.,

308 S.W.2d 122, 125, writ ref. n. r. e., and cases cited.

■ The trial court concluded estoppel existed. We have examined the record which may be said to relate to this theory. The evidence does not support it as a basis for judgment, and therefore the judgment does not properly rest on estoppel. The representations relied on as a predicate may be said to support an easement, but they do not establish a superior title.

The remaining theory for denying recovery is based on the finding that "by a series of agreements made at or about the time Harris sold the lots" he and those under whom appellees claim "fixed an agreed boundary" by which area A was included within appellees' lots. Apparently these "agreements" are the same relied upon to show estoppel or easement. It is not suggested the "series of agreements" was other than by parol, and there is no evidence of such an agreement in writing. This ground is emphasized by appellees.

■ We have been pointed by appellees to no evidence, and have found none, which sustains a finding of a parol boundary agreement. There is no suggestion of a dispute, doubt or uncertainty about the boundaries of appellees' lots, which were conveyed by reference to a plat on which lot dimensions are delineated, a straight line on the plat adjacent to "wavy lines" to the north being shown as the northernmost boundary of each lot. Appellees now stress the "wavy lines" on the plat as raising an issue that the lines denote the water's edge. There is no indication that it caused doubt or dispute; and it is not claimed the lines constitute a "series of agreements". "The existence of uncertainty, doubt or dispute is essential to the validity of such agreement." Gulf Oil Corporation v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711, 714. It does not exist.

The most the evidence shows is that several years before the dredged channel (which is said to be the "agreed boundary")

was created, Dr. Harris told some purchasers that theirs was a "waterfront lot", or that it "comes to the water". The subdivision plat relied on by appellees to show an agreed boundary was made in 1949, two years before the channel, its demarcation or location as a boundary existed, or could have been in contemplation of the parties. There is evidence Harris made similar statements to the predecessors of some of appellees after the channel was dredged, but there is nothing to show uncertainty or dispute. There is no showing of an "agreed boundary."

There is ample evidence, however, to support a determination that appellees have an easement "for ingress and egress" or a "right to use", or "access to the channel" across area A. The issue is not undisputed, however, and the judgment appealed from does not establish an easement in appellees. This is not an easement case. The appeal is from a take-nothing judgment in trespass to try title. Appellees have a number of counter points which they call "cross points", but there is none attacking the judgment because it does not establish an easement.

There is no sound basis, consequently, upon which the conveyance from the common source to appellant may be held void or ineffective. We find no sound ground, under the unchallenged findings and the evidence, for holding appellees have a superior title.

The judgment in the trespass to try title action is reversed, and judgment rendered that North Clear Lake Development Corporation recover title and possession of the .6785 acres constituting area A as described in the pleadings.

## THE INJUNCTION APPEAL

In this appeal the members of the Blackstock group are appellants. They unsuccessfully sought damages and an injunction to restrain appellees Tatum and North Clear Lake Development Corporation from "filling or attempting to fill any portion of Taylor Lake and from asserting their intention to develop any portion of Taylor Lake now claimed by them as a subdivision"; and from "dumping any character of fill into any portion of Taylor Lake lying between North Clear Lake Subdivision and plaintiffs' homes". The area described as being a "portion of Taylor Lake" is area B on the attached plat, called the "Tidal Flats", the "Peninsula" and the "Island" in the record. A take-nothing judgment was rendered.

The trial court determined that area B constituted upland at the time of the 1832 grant from Coahuila and Texas. Appellants say it is lake bottom, and they have riparian rights. The case was tried with, and is appealed on the same record as the trespass to try title appeal.

It is clear that at the time Harris conveyed the lots to appellants, and at the time he dredged the channel between area A and area B, shallow water covered area B, and extended to the platted northernmost line of appellants' lots. It was "marshy land."

A major portion of appellants' brief is devoted to convincing that they were granted by Harris the right to use area A "for access to the water", and therefore they have riparian rights. They say "the question of who owns the island is immaterial insofar as their riparian rights are concerned." We are unable to perceive how the asserted easement which, appellants say, "takes us by the hand and leads us across the strip and down to the water", i. e., the dredged channel, entitles appellants to damages or an injunction. In our opinion the trial court correctly decided that no riparian rights such as entitle appellants to damages or injunction exist. The existence of the easement claimed negatives appellants' claim of prescriptive title, and sustains the trial court's judgment. Appellants' points do not call for reversal, in our opinion.

This portion of the judgment is affirmed.

## ON REHEARING

Appellees assert we erred in adjudging title to be in appellant in the trespass to try title action "without reference to the easement" and without providing that such title is subject to the easement rights in area A. We agree with the contention that our judgment omits a determination of the rights, if any, which appellees have to the use of, or easement over area A. Appellant, by numerous points, attacked the trial court's findings to the effect that each of plaintiffs "has a perpetual easement across that portion" of area A which is adjacent to his property, and that Harris granted purchasers of lots "the free and unrestricted right to use said strip at all times and for all purposes."

If fee title to area A is in appellees, as the trial court determined, the findings that they have an easement or were granted a "right to use" the land would be incongruous as a basis for judgment. Appellees were not in a position to attack the favorable judgment (as they say we implied they were) on the ground the judgment did not award them an easement.

The proper judgment to be rendered here, then, presents an anomaly. The finding that appellees were granted an unrestricted right to use the area "at all times and for all purposes" is *not* supported by the record, and it is the only identification in the findings of the type or extent of use, easement, license, right of access or of ingress and egress upon which a judgment could be predicated. As we said in the original opinion, there is evidence to support a determination that appellees have *some* such right, but it is not undisputed; and it is far too indefinite to authorize us to attempt to fix the rights included in the trial court's general finding of "easement" by a judgment. See State v. Black Bros., 116 Tex. 615, 297 S.W. 213, 217, 219, 53 A.L.R. 1181.

We conclude that the equitable disposition is to sever and remand that portion of the action encompassed by appellees' claim of easement as alternatively asserted in their trial pleadings in cause No. 595,-229. Rule 434, Texas Rules of Civil Procedure; Durham v. Scrivener, Tex.Com. App., 270 S.W. 161. See cases cited, Appellate Procedure in Texas (1964), Secs. 18.15 and 18.16.

That claim, and the issues as to existence, nature and extent of an easement over area A is severed from the remainder of the action, and is remanded to the trial court for further proceedings, not inconsistent with our opinion, on those issues. Appellees' motion for rehearing is otherwise overruled.