**NORTH CLEAR LAKE DEVELOPMENT CORPORATION et al., Appellants,**

**v.**

**H. W. BLACKSTOCK et al., Appellees.**

**No. 321.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Jan. 28, 1970.

Rehearing Denied Feb. 25, 1970.

Preston Shirley, Mills, Shirley, McMicken & Eckel, Galveston, for appellants.

Charles R. Vickery, Jr., Vickery & McConnell, Houston, for appellees.

TUNKS, Chief Justice.

This case involves a tract of property located in the Galveston Bay area of Harris County. The tract has been the subject of much litigation. Phases of the controversy are reported in Wallace Investments, Inc. v. Blackstock (Tex.Civ. App.), 384 S.W.2d 910, no writ hist., a plea of privilege case, and in Blackstock v. Tatum (Tex.Civ.App.), 396 S.W.2d 463, no writ hist., a suit for damages for alleged abuse of process. The most recent report of an appellate opinion relating to the controversy is that of the Waco Court of Civil Appeals in Tatum v. Blackstock, 418 S.W.2d 269, writ ref., n. r. e. That was an appeal from an adverse judgment in a suit wherein North Clear Lake Development Corporation, as successor in interest to Lester L. Tatum, sued H. W. Blackstock and others in trespass to try title to establish the corporation's ownership of the tract in question. Blackstock, et al, defendants and cross-plaintiffs in the trial court in that case, also appealed from the trial court's judgment denying them the relief sought in their cross-action. The Waco Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that North Clear Lake Development Corporation recover legal title to the tract in question. The Appellate Court, however, severed that portion of the case wherein Blackstock, et al sought to establish an easement over the tract in question and remanded the severed portion of the case to the trial court for determination of "the issues as to existence, nature and extent of an easement" over the disputed property. On remand, in a non-jury trial, the trial court rendered judgment that Blackstock, et al, had an easement over the property, the nature of which easement will hereafter be discussed, and North Clear Lake Development Corporation has perfected this appeal from that judgment.

In 1949, Dr. Paul Harris began the development of a subdivision called El Lago Estates. The appellees, Blackstock, et al, are owners of residential lots in that subdivision. The names of the appellees and the number of the lot owned by each are as follows: Herbert Karl Beckmann, Lot #20; W. H. Blackstock, Lot #22; Edward H. Olling, Lot #24; Floyd E. King, Lot #25; and A. J. Phipps, Lot #26. As between the parties to this case, Dr. Paul Harris is the common source of title. None of the appellees acquired his lot by deed direct from Harris. Each is a

successor in title to a purchaser who did acquire title by deed from Harris. The deeds from Harris to appellees' predecessors in title were dated during a period from October 5, 1950 to July 9, 1956. These deeds from Harris described the property conveyed by lot number in reference to the recorded plat of El Lago Estates. None of them made any specific reference to any estate in the tract in controversy here.

In the course of the development of his property Dr. Harris dug an artificial channel leading into a natural body of water called Taylor Lake. That channel lay generally to the west of the lots later sold by Harris to the appellees' predecessors in title. There is a narrow strip of land containing about 1.68 acres, lying between the appellees' lots and the artificial channel dug by Harris. That strip is the tract of land here in controversy over which the trial court adjudged that the appellees had an easement. In the Waco Court of Civil Appeals' opinion in Tatum v. Blackstock, above cited, at p. 472, there is reproduced a plat showing the relative locations of the appellees' lots, the strip in controversy and the other property of appellant. Reference is here made to that plat for clarification of those locations. In that opinion the tract of land in controversy was referred to as "Area A" as shown on the reproduced map. The strip in controversy will herein be sometimes referred to as "Area A."

On October 20, 1960, Dr. Harris executed a deed to Lester L. Tatum conveying certain land lying to the west of appellees' lots. On June 29, 1962, Harris executed a "correction deed" to Tatum clarifying or amending the description of the earlier deed so as to specifically include the strip of land between the appellees' lots and the artificial channel. The appellant, North Clear Lake Development Corporation, acquired title from Tatum.

Some of those who were original grantees of the lots in question from Harris testified as to the circumstances under which they purchased. Some of their testimony suggests that before and in connection with the sales to them Harris made statements indicating that it was his intention that they, the purchasers, were acquiring waterfront lots with access to the artificial channel. In addition to Harris' statements there were physical facts that might have been calculated to cause the purchasers to believe that they were acquiring waterfront property. For example, the lateral fences on some of the lots extended to the waterline of the artificial channel dug by Harris. This testimony, even if it were so specific as to show that Harris definitely stated that he was granting to the grantees either full title to or an easement over the disputed Area A, would not, of itself, sustain a judgment awarding appellees the easements they seek. Those prior and concurrent statements by the grantor as to the estates to be granted, and granted, by the deeds were merged into the deeds themselves. The descriptions in the deeds were clear and unambiguous. Appellees did not allege that in the execution of the deeds there had been any fraud, accident or mutual mistake and did not seek to reform the deeds because of such allegations. The use of testimony as to prior or concurrent statements to vary the unambiguous terms of the deeds themselves in description of the estates granted, would violate the Statute of Frauds, Art. 3995, V.A.T.S. (now Sec. 26.01, Texas Business & Commerce Code, V.T.C.A.) and the Statute of Conveyances, Art. 1288, Vernon's Ann. Civ.St. Davis v. Bond, 138 Tex. 206, 158 S.W.2d 297; Davis v. George, 104 Tex. 106, 134 S.W. 326. The grant of an easement is a grant of realty to which the Statutes of Frauds and Conveyances are applicable. City of San Antonio v. Grandjean, 91 Tex. 430, 41 S.W. 477; Pokorny v. Yudin (Tex.Civ.App.), 188 S.W.2d 185, no writ hist. The contentions of the appellees to the effect that the deed from Harris to their predecessors in title should be construed as having specifically granted

the legal title to or an easement over the disputed Area A has been resolved against them by the final judgment of the Waco Court of Civil Appeals in Tatum v. Blackstock, supra.

After Dr. Harris had executed the deed conveying to appellees' predecessors in title the lots now owned by appellees, and while Harris remained the owner of Area A, the residential lot owners made extensive use of Area A. When Harris dug the artificial channel he dumped some of the spoil upon Area A. The lot owners leveled off that spoil bank, sodded the area and planted shrubs upon it. They placed bulkheads at the edge of Area A which joined the water of the channel in order to prevent erosion. They dug boat slips and constructed boathouses for the storage of motor vessels. They built walkways and roadways leading to these boathouses and slips. They extended fresh water lines and electrical lines into and over the area. Area A became a drainage area for septic tanks. Installations were made to facilitate drainage from the residential lots across Area A into the waters of the channel. These improvements were erected with the full knowledge and consent of Dr. Harris at a time when he was the owner of Area A. In fact, there is evidence that he, Dr. Harris, himself, dug one of the boat slips, charging the lot owner his cost for having so dug it. It appeared that Dr. Harris in his development program reserved some sort of right in connection with the approval of improvements to be built upon the residential lots. In one instance the lot owner submitted to Dr. Harris his proposed plans for construction of a residence and a boat house and Harris specifically approved both of them. There is evidence that Harris affirmatively suggested to the lot owners that they level off the spoil bank area and landscape it. The trial court found, as a fact, upon supporting evidence, that improvements placed upon Area A by the lot owners were permanent in nature and were constructed at an expense of more than $12,000. In addition to the monies spent the lot owners spent many hours of physical labor in the construction of the improvements on Area A.

The trial court rendered judgment that each of the appellee lot owners recover an easement over that portion of Area A lying between his residential lot and the artificial channel. The trial court's judgment spelled out certain uses which the lot owners were, under their easements, entitled to make of Area A. Those uses generally were of the character of the uses which had been made of the area during that period of time when Harris was the owner of it. They included the right to install and maintain bulkheads, to dig and maintain boat slips, construct boat houses, lay water and electric lines, to landscape the area and to maintain drainage across it.

There are three theories upon which the appellees contend that they have easements across Area A or that the appellant is estopped to deny the existence of such easements. Those theories are: first, a grant to their predecessors in title, by implication, of an easement appurtenant. Second, an oral grant of an easement under such circumstances as to constitute an exception to the Statutes of Frauds. Third, the existence of facts that give rise to an equitable estoppel which precludes the appellant from denying their rights to the easements claimed by them. We shall discuss those theories in the order named.

The circumstances under which there is a grant of an easement appurtenant by implication are set out in Ulbricht v. Friedsam, 159 Tex. 607, 325 S.W.2d 669, 676, wherein the Court quotes the following language from 28 C.J.S. Easements § 31, p. 687:

"Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi easement exists,

such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication."

In Drye v. Eagle Rock Ranch, Inc. (Tex.Sup.Ct.), 364 S.W.2d 196, there is a discussion of the law relating to the creation of easements without specific written grants. After noting the reluctance of the courts to engraft easements appurtenant by implication there is a listing of the facts that must be shown before it can be found that such an easement has been so created. The use of the servient estate must be *apparent*. The use of the servient estate must be *continuous*. The use to which the servient estate was applied at the time of the grant must have been *necessary* to the use of the dominant estate. This record here does not show the existence of those facts which must exist before the court will treat the conveyance as creating an easement appurtenant by implication. The artificial channel to and from which the appellees seek an easement of access over Area A was dug by Harris soon after he began his development program. The lots now owned by appellees were, when the channel was dug, unimproved and they remained unimproved until after Harris had sold them to appellees' predecessors in title. There is no evidence that Harris, during the time that he owned both the residential lots and Area A, had used Area A as a way between the residential lots and the newly dug channel or in any other manner except to deposit spoil dug from the channel. The use was not continuous because further acts by appellees were required before they could enjoy the uses to which they have applied Area A. At the time of the sales by Harris there was no "quasi easement" over Area A that was granted by implication. Thus the deeds by which Harris conveyed the lots to appellees' predecessors in title did not, by implication, include grants of the easements in question.

In Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, the Court recognized that there might be an oral grant of realty accompanied by such facts as to give rise to an exception to the Statute of Frauds. The Court's characterization of that exception there recognized is in the following language at p. 1116 of the reported opinion:

"From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge [No. 42 I.O. O.F.] v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist."

That exception is of no avail to these appellees. In the first place it is doubtful that the evidence can be construed as showing that Harris ever made any specific oral grant, either to the appellees or to their predecessors in title, of an easement or easements over Area A. Secondly, there is no evidence that either the appellees or their predecessors in title ever paid Harris any consideration for an easement, as such. The only consideration ever paid by any of them to Harris was that paid for the grant made by him in the execution of the written deeds. As noted above, those deeds cannot be construed as including in their descriptions a specific grant either of title to, or easements over, Area A.

In Drye v. Eagle Rock Ranch, Inc., supra, at p. 209, the Court said:

"* * * The owner of land, under some circumstances, may be estopped to deny the existence of an easement by making representations which have been acted upon by a purchaser to his detriment."

Again at p. 210 the Court said:

"The doctrine of estoppel in pais has been applied when the seller allows the purchaser to expend money on the 'servient' tract, as for example a drainage ditch across the grantor's land, or a house or other structure which encroaches on the land of the 'servient' estate. * * *"

This Court holds that by the application of the principles of equitable estoppel as stated by the Supreme Court in the Drye case, to the facts of this case, the appellant is estopped to deny the existence of the easement claimed by these appellees. The use by the appellees and their predecessors in title of Area A during the time it was owned by Harris was by his specific and tacit consent. Their use was open and obvious. The improvements were substantial, were permanent and were of such a character as to show an intent that the use be permanent rather than temporary. There was evidence showing that, as found by the trial court, appellees spent several thousands of dollars and many hours of labor in the making of such improvements. Not only were the improvements so visible as to put a purchaser from Harris on notice of the appellees' claimed rights to use Area A, but there was evidence that Harris told Tatum of appellees' easements at the time that Tatum bought Area A. Tatum stood in such relationship to North Clear Lake Development Corporation that notice to him was at least constructive notice to the corporation.

The majority of the Supreme Court in the Drye case held that there were not three facts upon the basis of which the owner of the alleged servient estate should be estopped from denying the existence of the easements claimed. The facts there, however, were substantially different and distinguishable from those of this case. In the Drye case the owners of the residential lots in a subdivision were claiming the right to use a tract of about 1,000 acres which lay outside of the subdivision for recreational purposes such as hiking, picnicing, etc. The Court stated, as one of the bases for denying that the ranch owner was estopped, the fact that a contrary holding would substantially impair the usability and saleability of a large tract of land. In this case the servient tract is a small one—less than one acre. It is a long, narrow strip not usable for residential purposes and lies within an area restricted by a city ordinance to single family residences. The tract has no access to any street or road. In the Drye case there was no showing that those claiming the easement had spent substantial sums of money and effort in making improvements that could be enjoyed by them only through the use of their claimed easement. In this case the cost of the improvements made by these appellees on Area A, and of value to them only through their use of the easements over that area, is substantial. In the Drye case, some of the facilities of the alleged servient estate were of such character as to require maintenance and there was a question as to who was obliged to maintain them for the benefit of the alleged dominant estates. In this case it is apparent that the burden of maintaining the improvements placed by appellees on Area A rests on those claiming the easements. In this case the existence of the easements has a much more direct and substantial relationship to the value of the use and ownership of the dominant estates than existed in the Drye case. An inherent factor in the value of appellees' lots, and other lots in the bay area, is the proximity of the water. Direct access to the water, giving the lots the practical benefit of water frontage, strongly affects that factor of value.

The application of the principles of equitable estoppel, where permissible, is made

to prevent an injustice that would result from the strict application of the unbending rules of law. Each case in which equitable estoppel is sought to be applied must rest upon its own facts. Barfield v. Howard M. Smith Company of Amarillo (Tex.Sup. Ct.), 426 S.W.2d 834. The facts of this case permit the application of equitable estoppel by which the appellant will not be heard to deny the existence of the easements claimed by appellees. The denial of such application would result in disproportionate injustice to appellees.

The judgment of the trial court made no distinctions between the various appellees in describing the character of use which each was entitled to make of that portion of Area A lying between his lot and the artificial channel. The appellant contends that this was error since different representations were made by Harris to different lot owners and the various lot owners made different improvements and different uses of Area A.

Area A is a continuous narrow strip of land all of which was owned by Harris at the time. The estoppel of Harris is not dependent entirely on verbal statements made by him. Estoppel may arise from conduct or from failure to act. 22 T.J.2d 670, Estoppel, Secs. 9 and 10. Harris' statements, conduct, and failure to act do not demonstrate that he intended to treat different parts of Area A as being susceptible to different uses by different lot owners. All of his statements, conduct and failure to act are calculated to induce all of the adjoining lot owners to believe that Area A was available to them for the purpose of enjoying waterfront rights in their lots. Four of the lots owned by appellees were contiguous. The other was separated from the four by one intervening lot. While different uses of Area A were made by different appellees, all of the uses were consistent with access to water frontage. Some appellees made more improvements on Area A than others, but all made some improvements thereon. It was not

reversible error for the trial court to hold that all of the lot owners had the same rights to the use of those portions of Area A lying between their respective lots and the water of the channel.

The judgment of the trial court is affirmed.