**Reverend Kirthell ROBERTS,
et al., Appellant,**

v.

**Conrad ALLISON, Appellee.**

No. 12–89–00158–CV.

Court of Appeals of Texas,
Tyler.

April 27, 1992.

Rehearing Denied Sept. 28, 1992.

Clay Gossett, Henderson, for appellant.

L. Wayne Scott, San Antonio, G. Thomas Allison, III, Longview, for appellee.

RAMEY, Chief Justice.

In this property dispute Appellants claim an easement by estoppel in a road across Appellee's land, or alternatively, they contend that the Appellee or his predecessors dedicated the easement to the public. After a jury trial, the court granted Appellee a judgment notwithstanding the verdict, from which Appellant has appealed. We will affirm.

Appellants and Appellee owned contiguous tracts of land; there has been no common ownership of the parcels. At the time of trial, the only path of ingress and egress to Appellants' property was by a road over Appellee's land; previously, there had been an alternate route which Appellants had allowed to become impassable. Shortly before the lawsuit was filed, Appellee placed a locked gate across the road but offered a key to those who used the road. Appellant, Reverend Kirthell Roberts' mother, was given a key. Reverend Roberts declined a key, commenting that if he required one, he could use his mother's key. Reverend Roberts testified that on one occasion thereafter, in using his mother's key, the gate did not unlock, but it did thereafter. Appellee testified that the lock has not been changed; there was no evidence of the key not functioning on any other occasion.

The jury found that Appellee was estopped from denying the existence of Appellants' easement over his property. To other issues, the jury failed to find that Appellee, or his predecessors in title, dedicated the land over which the road lies to public use. The jury also failed to find that Appellee's placement of a gate across the roadway constituted an unreasonable obstruction of the right-of-way. On February 22, 1989, the trial court entered its judgment notwithstanding the verdict that the Appellants take nothing by their suit. TEX. R.CIV.P. 301.

Appellants bring ten points of error. By their first point of error Appellants assert that the trial court erred in granting judgment for Appellee, "because evidence of probative force existed to support the jury's answer to special issue number one...." To sustain the trial court's judgment notwithstanding the verdict, we must determine that there was no evidence that Appellee was estopped from denying the existence of the easement to Appellants. *Douglass v. Panama,* 504 S.W.2d 776, 777 (Tex.1974). We review the evidence in the light most favorable to the Appellants, and every reasonable inference from that evidence must be indulged in their favor. *Id.* Additionally, we must reject the evidence, and inferences therefrom, which are contrary to the jury's finding. *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 777 (Tex. 1974). Furthermore, use of the road by Appellants and their predecessors in title does not estop the Appellee from denying Appellants' claim of easement. *Haskins v. Winters,* 641 S.W.2d 603, 607 (Tex.App.— Dallas 1982, writ ref'd n.r.e.).

■ Appellants argue that "[t]he key to this issue is whether or not there was evidence of a representation" by Appellee. They assert that neither Appellee, nor his predecessors in title, had denied anyone the use of the road in question. The thrust of Appellants' argument is that Appellee's or his predecessors' silence constituted a representation upon which Appellants relied to their detriment. *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex.1979). The opinion in *Storms*, however, explicitly states that "[t]he principle of estoppel by silence arises where a person is under a duty to another to speak, ..." *Id.; Clifton v. Ogle*, 526 S.W.2d 596, 602 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.) ("Equitable estoppel or estoppel by misrepresentation ... arises where a person, by his acts, representations, or admissions, or even by his silence *when it is his duty to speak*, ... induces another to believe that certain facts exist, ...") (emphasis added).

A duty to speak was found in *North Clear Lake Development Corporation v. Blackstock*, 450 S.W.2d 678 (Tex.Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). In finding that Appellant was estopped from denying the easement's existence, the court noted that the easement claimants had used the land at issue in an open and obvious manner and with the owner's specific and tacit consent. *Id.* at 683. In *Blackstock*, the Appellees had bought their lots from Appellant's predecessor in title. The vendor had made representations that Appellees owned the easements. *Id.* The court, furthermore, stressed that Appellees had made substantial permanent improvements to their property. *Id.* These improvements were of such character that the successor in title had at least constructive notice of the easements. *Id.* The court, therefore, concluded that Appellant was estopped from denying the existence of the easement.

■ On this record, we hold that Appellee had no duty to speak, i.e., advise appellants that they were permissive users of the road in order to avoid the imposition of an easement by estoppel. Since there was no prior common ownership of the tracts,

no vendor/vendee relationship had existed between the parties; such relationship is the usual context in which Appellants' contention is urged. Further, there is no probative evidence that fraud, actual or constructive, was perpetrated upon the Appellants in this case. Appellee and his predecessors in title have permitted, and continue to permit, their neighbors, including Appellants, to use the road; their failure to protest that use or affirmatively notify the users that they have no easement upon the land over which the road lies does not constitute a fraud upon Appellants. Appellee and his predecessors made no misrepresentation, nor did they engage in overreaching conduct by their silence; they had no duty to speak. *Wilson v. McGuffin*, 749 S.W.2d 606, 610–11 (Tex.App.—Corpus Christi 1988, writ denied).

■ Additionally, there is no evidence that Appellants had made improvements to their property in reliance upon a claimed easement over the road; the fact that they had their land surveyed, without more, does not constitute such substantial permanent improvements as to place Appellee on notice of a claimed road easement giving rise to a duty to speak to Appellants concerning their permissive use of the road. Permitting the alternative roadway to become impassable was not notice to Appellee of the easement claim. The trial court did not err in granting a judgment notwithstanding the verdict because there was no evidence to support the jury's answer that Appellee was estopped from denying the easement across his property to Appellants. Appellants' first point of error is overruled.

Appellants' second, third, and fourth points of error attack the jury's answers to special issues two, three, and six, respectively. The Appellants had the burden of proof on these issues. In special issues numbers two and three, the jury failed to find that Appellee, or his predecessors in title, dedicated the land over which the road lies to public use. In special issue six, the jury failed to find that Appellee unreasonably obstructed the public's use of the road when he placed a gate across it. Ap-

pellants' complaint is that each of these jury answers is "contrary to the overwhelming weight and preponderance of the evidence". As an attack upon the factual sufficiency of the evidence, we are required to review all of the evidence in the record and reverse the case only if the findings were clearly wrong and manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Addressing first the question of whether Appellee or his predecessor in title dedicated the land to public use, there is no evidence in the record of an express dedication. Appellants must prevail upon a theory of implied, or common law, dedication. Citing *O'Connor v. Gragg*, 339 S.W.2d 878 (Tex.1960), Appellants argue that the great weight and preponderance of the evidence demonstrate that Appellee, or his predecessors in title, impliedly dedicated the land to public use.

Appellant, Reverend Kirthell Roberts, 38, a resident of Mt. Pleasant, testified that he remembered the road as a child in the late 1950's. He stated that his family, as well as the public generally, have had unobstructed use of the road since that time. It was used for hunting, fishing, timber and access to oil wells. He has never discussed his right to use the road with Appellee.

Appellants' witness, Elmer Pipkins, age 80, Reverend Roberts' uncle, testified that he had lived from 1925 until 1929 near the subject road. He could not testify about the road after he moved away from the region in 1929. During the years that he lived nearby, the owner at that time, Dr. John Neal, allowed the public to use the road. There was another road, but it was impassable. The people that lived in that area who used the subject road, "kept it up". People were able to use the road to go to a fishing camp and an old sawmill in that area.

Appellee's witness, John Neal, Jr., 79, the son of the former owner of Appellee's property, Dr. John Neal, testified that he personally constructed the subject road in the mid 1940's for the Sun Oil Company. His sister, Corinne Neal Cook, was the owner of the property after Dr. Neal died

in 1931; witness Neal took care of the property for his sister. He testified that the Roberts earlier had used another road to get to their property. Neal further testified that the road was at no time dedicated to the public, and that Dr. Neal and his sister never gave the Roberts, or anyone else, an easement in the road. They, likewise, did not bar anyone from using the road.

The final witness, Appellee, Conrad Allison, acquired the underlying property in 1972 from Mrs. Cook. The road had not been dedicated to the public; he never gave, nor denied, anyone permission to use it. He stated that before he bought the property, he, personally, had used the road without securing permission to do so from the then owner. When Appellee erected the gate approximately two years before trial, he gave keys to the gate to the people that had used the road. He stated that he never contemplated denying access to the road to anyone who had occasion to use it. Appellee said that he erected the gate to control his land.

In summary, the public has been allowed to use the road without protest by the Appellee or his predecessors in title. The evidence shows two distinct origins of the road. In one, the road existed before 1925; the date the road was built, or the owner's intention as to dedication of the road to the public at the time public use of the road began, does not appear in the record. According to the witness Pipkins, whose knowledge of the road did not extend after 1929, the neighbors who used the road participated in its maintenance. The other historical line of testimony was that the road was built in the mid 1940's by John Neal, Jr. for an oil company while Appellee's predecessor, Corinne Neal Cook, was the owner. Under this version, there was no evidence that a road existed until the 1940's, or that the county or any other parties ever participated in the maintenance of the road.

■ If the jury believed the testimony of John Neal, Jr., the only evidence of implied dedication was the failure of the owners to prevent the public from using the road.

The jury was instructed that the owners' donative intent "must be shown by some *clear and unequivocal act or declaration* of the owner evidencing an intention to set it apart to public use". (Emphasis added) *Greenway Parks Home Owner's Ass'n v. City of Dallas*, 159 Tex. 46, 312 S.W.2d 235, 241 (1958). Under Neal's version, only passive allowance of public use of the road was shown; there was proof that there was no clear or unequivocal act or declaration by an owner to set the road apart for public use. The findings were not contrary to the overwhelming weight and preponderance of the evidence. Appellants' second and third points of error are overruled. By their fourth point of error, Appellants assert that the jury's failure to find that Appellee's placement of a locked gate across the road was an unreasonable obstruction, was against the overwhelming weight and preponderance of the evidence. Appellants rely solely upon *Gillett v. Van Horne*, 36 S.W.2d 305 (Tex.Civ.App.—El Paso 1931, writ dism'd), which does not involve evidence insufficiency but is a case in which the court held that, under its facts, the placement of a gate across the roadway was an unreasonable obstruction as a matter of law. In *Gillett*, Appellant's right to an easement was undisputed. *Id.* at 307. Appellee's movement of a fence obstructed all of that easement except for a strip two feet wide. *Id.* The reviewing court found that the narrowing of the width of the easement to two feet which rendered the road unusable was material. *Id.*

This case differs significantly. Here, the existence of an implied easement was hotly disputed. Appellee placed a locked gate across the roadway, but offered keys to the people known to have a need to use the gate for access. Appellee denied that he had ever contemplated denying the Roberts access to the road. Other than the single unexplained instance in which the key is alleged to have not worked to open the gate, there was no testimony of access denial. For all the stated reasons, *Gillett* is not controlling here.

This is a factual sufficiency point of error. The jury determined the reasonable-

ness of the use of the land over which an easement extends. *Id.* Other than the one unexplained occasion, nothing in the record suggests that Appellee's gate ever barred access to the land. The finding was not against the great weight and preponderance of the evidence. Appellants' fourth point of error is overruled.

■ Appellants' fifth point of error contests the trial court's exclusion of evidence of an alleged oral agreement between Reverend Roberts' grandfather and Appellee's predecessor in title, Dr. Neal. At trial, Roberts attempted to testify that his grandfather and Dr. Neal orally agreed that Appellants' family would have access to their land by the use of the subject road. The limited bill of exception includes only testimony that, based upon the conversation, Appellants family believed that they "had an easement". Further, Roberts acknowledged that despite this belief, his family "did not lose any right associated with the property or incur any detriment."

Appellee objected to the testimony of the claimed oral agreement for the reason that the testimony would violate the hearsay rule of evidence. Appellants contend that this evidence falls within an exception to the rule against hearsay, specifically, Tex. R.Civ.Evid. 803(20). The applicable portions of Rule 803 read as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> .    .    .    .    .
>
> **(20) Reputation Concerning Boundaries or General History.** Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or State or nation in which located.

Rule 803(20) is a statutory incarnation of "a doctrine long recognized in Texas ... which previously allowed reputation arising ante litem motam to prove land boundaries and customs, ..." 33 S. Goode, O. Wellborn, and M. Sharlot, Texas Rules of Evidence: Civil and Criminal 596 (Texas Prac-

tice 1988). The common law provided that the evidence must be evidence of reputation, as opposed to mere proof of an individual assertion. 1 A R. Ray, Texas Law of Evidence Civil and Criminal 495 (Texas Practice 3d ed. 1980). Appellants cite no cases in support of their contention.

■ Appellee argues that the evidence fails to meet the exception's requirements, because the assertion does not rest upon general community reputation and does not "relate to something of general or public interest as opposed to a private concern." A reason for the exception is "[t]he fact that a prolonged observation and discussion of certain matters of *general interest by a whole community will sift possible errors and bring the result down to us in a fairly trustworthy form furnishes a guarantee of correctness.*" (emphasis added) *Id.* at 494. This proposed testimony pertains to an individual family's assertion of an easement; there is no contention of the *community's* interest in or the community's knowledge of the Roberts family's claim to access Appellee's property. Likewise, there is no contention of the existence of a general reputation within the community of this right of access. The bill did not inform the trial court of the pertinent facts related to the alleged conversation.[1] There was no proof of the recognized "vehicles of reputation", such as "declarations of residents, old maps, surveys, deeds and leases" of the claimed easement. *Id.* at 495. A party seeking to introduce evidence as an exception to the rule against hearsay has the burden of clearly showing that the evidence constitutes the type of evidence to which the exception relates. *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298 (Tex. 1962). The trial court did not abuse its discretion in excluding Reverend Roberts' testimony of a claimed oral agreement granting an easement to Appellants over the subject property. Appellants fifth point of error is overruled.

■ Appellants' sixth point of error attacks the trial court's refusal to allow Ap-

pellants to question Appellee concerning his motives for denying the easement to the Appellants. Appellants' attorney asked Appellee, "how would an easement across that land hurt you then?" The trial court sustained Appellee's objection that the evidence was "not germane to the lawsuit." Appellants argue on appeal that the evidence is relevant as it pertains to the "reasonableness of the blockage of the easement."

The merits of Appellants' sixth point of error are not reached, because Appellants have not preserved this contention for review. After the trial judge sustained Appellee's objection, Appellants did not perfect the requisite offer of proof or bill of exception preserving Appellee's testimony or the basis for its admissibility. *Texas State Board of Dental Examiners v. Silagi,* 766 S.W.2d 280, 284 (Tex.App.—El Paso 1989, no writ); *Texas Employers' Insurance Association v. Garza,* 557 S.W.2d 843, 847 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). We dismiss Appellants' sixth point of error.

■ Appellant's seventh, eighth, ninth, and tenth points of error all relate to two explanatory instructions which accompanied the charge of the court. By points seven and nine, Appellants complain of the trial court's refusal to submit their requested explanatory instructions regarding the special issue inquiring as to whether Appellee or Appellee's predecessor in title had dedicated the land over which the road lies to public use. By points eight and ten, Appellants contend that the instructions that were submitted to the jury were misstatements of the law, because those instructions failed to include the language requested by Appellants. Specifically, Appellants argue that the trial court's version of the explanatory instructions failed to inform the jury that public dedication of an easement may be implied from the conduct or inaction of a landowner. Appellants' requests included an instruction that "use

---

1. The approximate date of the alleged conversation could be significant, because Dr. Neal died in 1931, whereas the witness, John Neal, testified that he did not construct the road in question until sometime in the 1940's.

with the acquiescence of the owner is sufficient to show an intent to dedicate."

The trial judge is accorded discretion in the actual wording and submission of explanatory instructions which accompany special issues. TEX.R.CIV.P. 273; *Clancy v. Zale Corp.*, 705 S.W.2d 820, 825 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Scott v. Houston Independent School District*, 641 S.W.2d 255, 257 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Explanatory instructions are designed only to aid the jury in answering the special issues. *Jones v. McCoy*, 466 S.W.2d 667, 669 (Tex.Civ.App.—Eastland 1971, no writ). Moreover, there is no error in refusing to submit a requested explanatory instruction if the submitted instructions contain the substance of the requested instruction. *Gilson v. Universal Realty Co.*, 378 S.W.2d 115, 119 (Tex.Civ.App.—Houston [1st Dist.] 1964, writ ref'd n.r.e.). The requested explanatory instructions must be submitted in substantially correct wording. TEX.R.CIV.P. 278.

It has been held that the essential elements of implied dedication are: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so: (3) the public relied on these acts and will be served by the dedication; and, (4) there was an offer and acceptance of the dedication. *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256; *Zak v. Sanchez*, 700 S.W.2d 259, 261 (Tex. App.—San Antonio 1985, no writ). Evidence pertaining to the first of these elements, donative intent, has received primary attention by reviewing courts. Brousseau, *Real Property: Purchase, Sale, Title, and Ownership*, 40 Sw.L.J. 318 (1986).

The evidence here only demonstrates that Allison and his predecessors in title had acquiesced in the public use of their road. That evidence alone is *equivocal* of the owner's donative intention. *Barstow v. State*, 742 S.W.2d 495, 506 (Tex.App.—Austin 1987, writ denied). There must be evidence of *some additional factor* that implies a donative intent, such as the expenditure of public funds for maintenance of the roadway. *Id.; Greenway Parks Home Owners Ass'n*, 312 S.W.2d at 241.

Except for Pipkins' testimony that the users of the road helped to "keep it up" during the 1925 to 1929 period, there was no probative evidence of any possible additional factor demonstrating donative intent of the roadway. There was no evidence of county maintenance of the road. As discussed, the testimony was disputed as to whether the road was even in existence in the 1920's or whether it was built by the witness Neal in the mid 1940's. Under John Neal, Jr.'s version of the history of the subject road, there was no evidence of any additional factor. *Barstow*, 742 S.W.2d at 506–07. "Acquiescence in public use of the road without evidence of some additional factor that implies a donative intention ..." does not raise an issue of such intent. *Greenway Parks Home Owners Ass'n*, 312 S.W.2d at 241–42; *Barstow*, 742 S.W.2d at 505–507.

Therefore, under the facts of this case, Appellants' requested instructions are not substantially correct statements of the law. We hold that the instructions submitted by the court adequately conveyed the legal concept of dedication by implication. Finding no abuse of discretion by the trial court in the submission of the dedication issues and explanatory instructions, we overrule Appellants' final four points of error.

By a single cross point, Appellee charges that the explanatory instruction accompanying special issue number one should not have been submitted to the jury. In view of our disposition of the case, we do not address the cross point.

The judgment of the trial court is affirmed.