

NUMBER 13-18-00128-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RUTH VILLARREAL, INDIVIDUALLY AND
RUTH VILLARREAL INSURANCE, LLC,                    Appellants,

v.

ALBERT TREVINO, INDIVIDUALLY AND
D/B/A BOB TREVINO INSURANCE AGENCY,                 Appellee.

On appeal from the 92nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Chief Justice Contreras**

By three issues, appellants/cross-appellees Ruth Villarreal individually and Ruth

Villarreal Insurance, LLC (collectively Villarreal) challenge the trial court's order granting

a no-evidence summary judgment motion filed by appellee/cross-appellant Albert

Trevino, individually and d/b/a Bob Trevino Insurance Agency (collectively Trevino). *See* Tᴇx. R. Cɪv. P. 166(a)(i). Villarreal contends that the trial court erred by: (1) granting summary judgment because it weighed evidence and resolved factual disputes against her; (2) "weighing the evidence" of a witness's Fifth Amendment plea; and (3) excluding deposition testimony from Villarreal's husband Everardo as hearsay.

On cross-appeal, Trevino argues that the trial court erred by overruling his objections to: (1) Villarreal's request to judicially notice all pleadings and documents in the court's file; (2) the admission of certain deposition testimony; (3) the admission of certain business records; and (4) the affidavit of an expert witness designated by Villarreal.

We affirm.

## I. BACKGROUND

In 2012, Villarreal contracted with La Joya Independent School District (La Joya ISD) to be its insurance agent and third-party administrator for the school district's health plan, as well as to offer voluntary products to school district employees. During the school board election that year, Trevino gave $10,000 to candidate Juan Jose "J.J." Garza, who was running on a ticket with four others (collectively Team Liberty). The money was split evenly amongst the five candidates, with each receiving $2,000. Trevino had known Garza for ten years at that time but did not know the other candidates. The Team Liberty candidates won their elections and in 2013, upon taking office, they voted to replace Villarreal with Trevino as La Joya ISD's insurance agent and third-party administrator.[1]

---

[1] La Joya ISD later terminated its contract with Trevino, leading to a separate lawsuit. *See La Joya Indep. Sch. Dist. v. Trevino*, No. 13-17-00333-CV, 2019 WL 1487358, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2019, pet. filed) (mem. op.) (reversing trial court's denial of La Joya ISD's plea to the jurisdiction).

2

In February 2013, Villarreal filed suit against several parties including Trevino, La Joya ISD, and the Team Liberty candidates.[2] Villarreal's live petition in the instant cause, filed in July 2017, lists Trevino as the only defendant. Villarreal alleged tortious interference with an existing contract and tortious interference with prospective business relations.

In November 2017, Trevino moved for no-evidence and traditional summary judgment on Villarreal's claims. *See* TEX. R. CIV. P. 166a(c), (i). After a hearing, the trial court found that the summary judgment evidence was not sufficient to survive the no-evidence motion, and it did not rule on the traditional motion. On February 7, 2018, the court rendered an order containing extensive findings in a narrative format. The order stated in part:

> [Villarreal]'s summary judgment evidence, Responses, pleadings and argument show only that [Trevino] gave J.J. Garza a $10,000.00 check and that the new La Joya Board changed insurance plan administrators. [Villarreal]'s reliance on Garza's assertion of his 5th Amendment right not to answer incriminating questions at his deposition as raising inferences that [Trevino] bribed Garza is nothing more than mere surmise or speculation and of no probative value.

The order additionally sustained Trevino's objection to the admission of deposition testimony in which Everardo stated that he had heard "rumors" of a plan by school board candidates to have Trevino replace Villarreal as the insurance administrator. When asked directly what he had heard, Everardo replied, "That if the school board—their slate, Team Liberty, would win, that they were going to cancel or fire her and get Bob Trevino as the

[2] La Joya ISD and the Team Liberty candidates filed a plea to the jurisdiction which was denied. *See La Joya Indep. Sch. Dist. v. Villarreal*, No. 13-13-00325-CV, 2014 WL 3050484, at *1 (Tex. App.—Corpus Christi–Edinburg July 3, 2014, pet. denied) (mem. op.) (affirming trial court's denial of La Joya ISD's plea to the jurisdiction), *implicitly overruled by Zachry Const. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 110 n.54 (Tex. 2014), *as recognized in Trevino*, 2019 WL 1487358, at *4 n.6.

3

agent." Everardo testified that he approached Joel Garcia, a Team Liberty candidate, about the rumors before the election. Everardo reported the following:

> I got into [Garcia's] truck and I explained to him what I was hearing about my wife, that they wanted to fire her or get—cancel her contract, and I did mention to him that she had a 3-year contract, and she seemed to be doing a good job. And he told me that any contract can be canceled.

In regard to this testimony, the court stated in its order, "This evidence is patently hearsay, inadmissible and not competent summary judgment evidence to prove any fact, and, to this extent, [Trevino's] objection is sustained." The order granted no-evidence summary judgment, finding that Villarreal "presented no competent, credible summary judgment evidence that [Trevino] tortiously interfered with [Villarreal]'s contracts and business relationships with [La Joya ISD]."

This appeal followed.

## II. DISCUSSION

### A. Excluding Evidence as Hearsay

By her third issue, which we address first, Villarreal argues that the trial court reversibly erred when it excluded her husband's testimony regarding rumors of a plan to remove Villarreal.

#### 1. Applicable Law and Standard of Review

We review the exclusion of summary judgment evidence for an abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). A trial court abuses its discretion when it rules without reference to any guiding rules or principles. *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). That a trial judge decides a matter within his discretionary authority in a matter different than we would in a similar circumstance does not mean that an abuse of discretion has occurred.

4

*Downer*, 701 S.W.2d at 242. We will uphold the trial court's ruling on any legal theory on which it could have properly relied. *See Guaranty Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam); *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411 (Tex. App.—Dallas 2006, pet. denied).

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible as evidence. *See* TEX. R. EVID. 801(d), 802. Statements offered for a purpose other than to prove the truth of the matter asserted are not hearsay. *See* TEX. R. EVID. 801(d). Additionally, the Texas Rules of Evidence set forth that certain other types of statements are excluded from the definition of hearsay. *See* TEX. R. EVID. 801(e). Even if a statement is considered hearsay, it may be admissible under certain exceptions provided in the rules. *See* TEX. R. EVID. 803.

**2.      Analysis**

Everardo testified that he heard "rumors" that the Team Liberty candidates planned to oust Villarreal and install Trevino as the school board's insurance agent. He later testified that he recounted those rumors to Garcia. The declarant in the first instance is the person he heard the rumor from. The second instance is hearsay within hearsay, with Everardo being one declarant and the person he heard the rumor from being the other. Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule. TEX. R. EVID. 805.

Villarreal argues that her husband's testimony regarding "rumors" he heard should not have been excluded. Specifically, she argues the following:

> [T]he rumors were not introduced to prove that they were true or that they were even out in the public domain. Rather, the rumors, heard by both [Everardo] and [Trevino] formed the motive and intent for [Everardo] approaching Mr. Garcia about the rumors. Mr. Garcia's comment that "any

5

contract can be cancelled" turned out to be quite telling, as he was the La Joya ISD school board member that initiated the vote against [Villarreal] in favor of [Trevino].

. . . .

The trial court's order excluded the statements that [Everardo] heard "as patently hearsay." However, these statements were not introduced to assert the truth of the matter asserted. Rather, these statements formed the basis of the witness's then-existing mental condition that explain the motive and intent of his confrontation of one of the school board members who ultimately voted against [Villarreal].

(Footnotes and citations omitted.) Villarreal cites Texas Rule of Evidence 803(3), which provides an exception to the hearsay rule for "Then-Existing Mental, Emotional, or Physical Condition":

A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

TEX. R. EVID. 803(3).

"A party seeking to introduce evidence as an exception to the rule against hearsay has the burden of clearly showing that the evidence constitutes the type of evidence to which the exception relates." *Roberts v. Allison*, 836 S.W.2d 185, 191 (Tex. App.—Tyler 1992, writ denied) (citing *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298 (Tex. 1962)). If evidence is to be admitted through Rule 803(3), the declarant's state of mind must be relevant to the issues. *See James v. Tex. Dep't of Human Servs.*, 836 S.W.2d 236, 243 (Tex. App.—Texarkana 1992, no writ). Evidence which is not relevant is inadmissible. TEX. R. EVID. 402.

Regardless of whether Everardo's testimony properly falls under the Rule 803(3) exception, Everardo's state of mind—in Villarreal's words, his "motive and intent" for

6

talking to Garcia—is irrelevant to the issues in this case. *See James*, 836 S.W.2d at 243; *see also* TEX. R. EVID. 402. The trial court did not abuse its discretion in excluding this summary judgment evidence. We overrule Villarreal's third issue.

## B. No-Evidence Summary Judgment

By her first issue, Villarreal argues the trial court erred "by acting as the jury in weighing evidence against the non-movant, resolving factual disputes against the non-movant," and granting the no-evidence summary judgment motion. By her second issue, she contends that the trial court erred by "acting as the fact finder in weighing the testimonial evidence" of Garza, who repeatedly asserted his Fifth Amendment rights at his deposition. We construe Villarreal's second issue as a challenge to the merits of the summary judgment ruling. Accordingly, we will address the issues together.

### 1. Applicable Law and Standard of Review

We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a pretrial directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). The non-movant must produce more than a scintilla of evidence to raise a fact issue on the challenged elements. *Id.* at 751. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Summary judgment evidence is viewed in a light most favorable to the non-movant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

7

A fact-finder in a civil case is not forbidden from drawing an inference from a party's claim of privilege under the Fifth Amendment. *See* TEX. R. EVID. 513(c). However, a claim of privilege is not a substitute for evidence. *Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied) (citing *United States v. Rylander*, 460 U.S. 752, 758 (1983)).

The elements of tortious interference with an existing contract are: (1) the plaintiff had a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the plaintiff's injury; and (4) the plaintiff incurred actual damage and loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). The elements of tortious interference with prospective business relations are: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) the defendant intentionally interfered with the relationship; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). In his summary judgment motion, Trevino argued that there is no evidence as to any of the elements of either claim.

## 2. Analysis

Garza was deposed twice, first in April 2017 and then in January 2018. He was under federal indictment on unrelated charges at the time of his first deposition and he repeatedly asserted his Fifth Amendment right not to testify. Garza's second deposition took place after he pleaded guilty to the charges and he no longer asserted the Fifth.

Villarreal claims that the trial court "[d]epart[ed] from well-established precedent"

8

when it held that "'Garza's assertion of his 5th Amendment right not to answer incriminating questions . . . is nothing more than mere surprise [sic] or speculation and of no probative value.'" She cites the following portion of *Baxter v. Palmigiano*, in which the United States Supreme Court held:

> [T]he Court has consistently recognized that *in proper circumstances* silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause. Indeed, as Mr. Justice Brandeis declared, speaking for a unanimous court in the *Tod* case, supra, which involved a deportation: 'Silence is often evidence of the most persuasive character.'

425 U.S. 308, 319 (1976) (emphasis added) (citing *United States v. Hale*, 422 U.S. 171, 176–77 (1975); *Gastelum-Quinones v. Kennedy*, 374 U.S. 469, 479 (1963); *Grunewald v. United States*, 353 U.S. 391, 418–24 (1957); *Adamson v. California*, 332 U.S. 46 (1947); *Raffel v. United States*, 271 U.S. 494 (1926); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923); *Twining v. New Jersey*, 211 U.S. 78 (1908)).

Villarreal does not indicate what the "proper circumstances" look like, nor does she explain how this case falls under that category. *See id.* She cites *Gebhardt v. Gallardo*, arguing that Texas courts have held similarly to *Baxter* and the numerous cases cited by it. 891 S.W.2d 327, 331 (Tex. App.—San Antonio 1995, orig. proceeding). However, *Gebhardt*, like *Baxter*, involved a situation where a *party to the proceeding* refused to testify. *See Baxter*, 425 U.S. at 333–34 ("[T]he Fifth Amendment does not forbid adverse inferences against *parties* to civil actions when *they* refuse to testify in response to probative evidence offered against *them*." (emphasis added)); *Gebhardt*, 891 S.W.2d at 331 ("The [First] Amendment does not preclude the inference where the privilege is claimed by a *party* to a civil cause." (citation omitted)).

In regard to situations where witnesses plead the Fifth, the El Paso court has held:

In a civil case, a fact finder may draw reasonable inferences from a party's

9

assertion of the privilege against self-incrimination. But a claim of privilege is not a substitute for relevant evidence. Without more, the negative inference that the trial court may have drawn cannot rise beyond mere suspicion. Consequently, the inference could not be considered at all.

*Blake v. Dorado*, 211 S.W.3d 429, 433–34 (Tex. App.—El Paso 2006, no pet.) (holding that defendant's assertion of his Fifth Amendment privilege against self-incrimination did not create an inference of liability sufficient to withstand a no-evidence summary judgment where plaintiffs presented no other relevant evidence).

The reasoning in *Blake* applies here. Without some probative evidence that Trevino intentionally interfered with Villarreal's existing or prospective business relations, any negative inference that might be drawn from Garcia's Fifth Amendment assertion does not rise above a mere suspicion. *See Webb*, 331 S.W.3d at 883. In *Webb*, a wrongful death action was brought against the owner of a vehicle that struck and killed a motorcyclist. *Id.* at 881. The plaintiffs alleged that the car owner negligently entrusted his vehicle to his brother. *Id.* The defendant moved for no-evidence summary judgment; plaintiffs argued that negative inferences from the defendant's Fifth Amendment plea were sufficient to withstand no-evidence summary judgment. *Id.* The court found that the record "does not contain information pertaining to the ownership of the vehicle, the driving record of [the defendant], or even a copy of the police report of the incident." *Id.* at 883. The court held that there was no probative evidence, that any negative inference drawn as a result of Defendant's assertion of privilege is mere suspicion, and that "mere suspicion is less than a scintilla of probative evidence necessary to raise a fact issue on the challenged elements." *Id.*

We find the instant case to be analogous to *Webb*. Garza's Fifth Amendment claim, by itself, does not give rise to more than a mere suspicion regarding any of the

10

elements of Villarreal's claims. The record does not contain any evidence that Trevino's payment of $10,000 to Garza was anything more than a lawful campaign contribution. In *Webb*, the car's existence, without more, did not constitute evidence of ownership. *See id.* Here, evidence of the $10,000 payment, without more, does not constitute evidence of an intentional act of interference with Villarreal's existing or prospective business relations. "Some suspicion linked to other suspicion produces only more suspicion" and as such "is no more than a scintilla, and in legal effect, is no evidence." *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993); *Kindred*, 650 S.W.2d at 63.

Villarreal points to certain language in the trial court's order which she claims shows the court was "improperly weighing evidence in favor of [Trevino]," the movant.[3] We note that, at the summary judgment stage, findings of fact and conclusions of law "can have no purpose and should not be requested, made, or considered on appeal." *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) ("[F]indings of fact and conclusions of law have no place in a summary judgment proceeding . . . ."). In any event, we have not considered the specific language of the trial court's order except to discern the trial court's rulings on the summary judgment motion and objections to evidence. In our analysis of the merits of the summary judgment motion, we have considered the record evidence in the light most favorable to Villarreal, the non-movant, *see Smith*, 288 S.W.3d at 424, and we have determined that the evidence did not create a fact issue as to Villarreal's claims.

Because the record contains no more than a mere scintilla of evidence to support

---

[3] Specifically, Villarreal complains of the following language in the order: (1) "Garza parceled out the funds"; (2) "[Trevino] was within his right to make a political or campaign contribution to J.J. Garza"; and (3) "[Trevino's] summary judgment evidence shows that the money was used for the campaign for election to the school board."

the elements of Villarreal's claims, the trial court did not err by granting Trevino's motion for no-evidence summary judgment. *See* TEX. R. CIV. P. 166(a)(i). We overrule Villarreal's first and second issues. In light of our ruling, Trevino's issues on cross-appeal are moot and we do not address them. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed the
25th day of July, 2019.