Mrs. Carrie W. WESTBROOK et al.,
Appellants,

v.

Merrill C. WRIGHT et ux., Appellees.

No. 595.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 1, 1972.

Rehearing Denied March 22, 1972.

Charles P. Merrill, Gaines & Merrill, Houston, for appellants.

J. P. Markham, Jr., Houston, for appellees.

SAM D. JOHNSON, Justice.

Sewer easement case.

This action was brought by Merrill C. Wright and his wife who are appellees here. The defendants in the trial court, and appellants here, are Carrie W. Westbrook, individually and as representative of the estate of Mrs. H. C. Whitaker, and Fred Westbrook. The case was tried without a jury. The trial court rendered judgment for the plaintiffs establishing a sewer easement across defendants' property and permanently enjoining defendants' interference with such easement.

The property involved consists of a number of lots which are adjacent to each other. From north to south the lots are numbered 3, 4, 5 and 6. To the east and immediately adjacent to them running south to north are lots 7, 8, 9 and 10. The back of lot 6 is adjacent to the back of lot 7, the back of lot 5 is adjacent to the back of lot 8, etc. All of these lots were originally owned by H. C. Whitaker who was the father of the defendant Mrs. Carrie W. Westbrook. The sewer lines were laid about the year 1923 when Whitaker owned all of the lots. The sewer lines ran from the existing houses on lots 3, 4 and 5 to the back of lot 5 where they were gathered into one line. This line then ran through the lot adjacent to it on the east, lot 8, and on to Gregg Street on which lot 8 faces.

In 1942 the plaintiff Wright acquired title to lots 3, 4, 5 and 6 from Houston Title Guaranty Company. Lot 6 was subsequently sold. It was stipulated in open court by the plaintiffs and defendants that H. C. Whitaker was their common source of title. H. C. Whitaker died in 1953 and his widow followed him in death in 1958. Lots 7 and 8 were left to the Whitaker's children, among whom is the defendant Mrs. Carrie Westbrook.

In 1963 the sewer line across lot 8 was severed, at the request of the defendants, by a plumbing company. A new line was put in place of the old deteriorated line. The new line was put at such an elevation, however, that plaintiffs were unable to connect into it and as a result sewage accumulated at the back of lot 5. Plaintiffs, on their own initiative, had a box installed at the back of lot 8, which collected the sewage and compensated for the elevation of the new line by the insertion of a plastic line to and through the new line. This line was again disconnected by defendants and reconnected by plaintiffs in 1968.

Defendants' continued threats to again disconnect the sewage line caused plaintiffs to bring the instant suit for an injunction and adjudication of an easement across lot 8. The trial court granted a temporary injunction under which plaintiffs were empowered to construct their own temporary sewer drainage line across lot 8 within approximately three feet of defendants' existing line. In the court's final judgment a sewer flowage easement was established through lot 8 which extended two and one-half feet on each side of the center line of the old concrete pipe. The court's final judgment also made the temporary injunction into a permanent injunction.

Some of the points of error and many of the cases cited by the defendants are based upon the assumption that the trial court's judgment is based upon an adjudication of the existence of an easement by way of necessity or by way of prescription. Defendants complain of certain findings of the trial court and their lack of support. Error is also urged in the trial court's exclusion of evidence of a feasible alternate route for the sewer line, of the refusal to exclude evidence of the existence of the temporary sewer line placed on lot 8 under the temporary injunction and the costs that would be involved to place a sewer line to Lee Street, and because the judgment is uncertain as to the permanent easement granted.

■ The trial court's judgment does not specify the theory upon which the easement was established, however. Findings of fact and conclusions of law were made by the trial court at the request of the defendants. While defendants have construed such findings to support an easement by way of necessity such findings only support a judgment based on an implied easement appurtenant. It is upon this latter theory of implied easement appurtenant that the instant case is considered and our remarks will be limited to such theory of recovery. The findings of the trial court will be sustained if there is any evidence to support them. Gulf Freeway Lbr. Co. v. Houston Invest. Rlty. Trust, 452 S.W.2d 39 (Tex.Civ.App.— Houston (14th Dist.) 1970, no writ); Coastal Plains, Inc. v. City of Fort Worth, 443 S.W.2d 414 (Tex.Civ.App.—Fort Worth 1969, no writ). A statement of facts has also been brought forward.

■ There is a distinct difference in the proof required to establish an implied easement appurtenant and an easement by way of necessity. Fender v. Schaded, 420 S.W.2d 468 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.). The circumstances under which there may be a grant of an implied easement appurtenant are set out in Ulbricht v. Friedsam, 159 Tex. 607, 325 S.W.2d 669, 676 (1959), quoting from 28 C.J.S. Easements § 31, p. 687 (1941):

"Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication."

■ There are four essential elements necessary for the establishment of an implied easement appurtenant. (1) There must have originally been unity of owner-

ship of the dominant and servient estate; (2) the use must have been apparent at the time of the grant; (3) the use of the easement until the time of the grant must have been continuous; and (4) the easement must be reasonably necessary to a fair and enjoyable use of the dominant estate. Fender v. Schaded, supra; Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 207–208 (Tex.Sup.1962); Bickler v. Bickler, 403 S.W.2d 354 (Tex.Sup.1966). Whether these requirements are met is to be determined at the time the grantor, the one imposing the quasi easement on one portion of his property for the benefit of another portion, conveys away the dominant tenement, that portion benefitted, and retains the servient tenement.

In the instant case the common ownership of the dominant and servient estate was stipulated. It was such owner, Whitaker, who installed the original sewer lines, used them for an extended number of years and subsequently conveyed lots 3, 4 and 5 with the lines in place, functioning and performing their intended use across lot 8 which he retained. Subsequent to the grant the use of the line across lot 8 was again continued for an extended number of years. We believe it to be apparent that Whitaker's probable intention accords with the granting of the easement. See Fender v. Schaded, supra; 25 Am.Jur.2d Easements and Licenses Sec. 28, p. 442 (1966).

■ The record further makes clear that the use of the easement was apparent at the time of the grant. It was in existence at the time of the conveyance by Whitaker and had been for an extended number of years. The fact that sub-surface installations might not be obvious to a stranger to the transaction upon casual observation will not necessarily defeat the requirement of apparency. In Wiesel v. Smira, 49 R.I. 246, 142 A. 148, 150 (1928), the Court was confronted with a similar circumstance and stated that although the sub-surface pipe was not visible, clearly

the appliances connecting with and leading to it were obvious and disappearance of waste from the houses involved was plain. "Apparent" in instances involving sub-surface installations that are installed to avoid being seen can not be considered to be synonymous with "visibility". 1 Thompson on Real Property 474, Sec. 368 (1st ed. 1924). It may be considered to be apparent if its existence is indicated by signs which might be seen or known on a careful inspection by a person ordinarily conversant with the subject. 3 Tiffany, Real Property (3rd ed.) 263, Sec. 784. See also Romanchuk v. Plotkin, 215 Minn. 156, 9 N.W.2d 421 (1943); Sievers v. Flynn, 305 Ky. 325, 204 S.W.2d 364 (Ct.App.1947); Pokorny v. Yudin, 188 S.W.2d 185 (Tex.Civ.App.— El Paso 1945, no writ).

The use of the easement until the time of the grant was quite obviously continuous and there is no serious contention to the contrary.

■ Lastly the easement must be reasonably necessary to a fair and enjoyable use of the dominant estate. The rule to be applied in cases of implied grant of an easement appurtenant is one of reasonable, rather than strict, necessity. Fender v. Schaded, supra 420 S.W.2d at p. 472; Scarborough v. Anderson Bros. Const. Co., 90 S.W.2d 305, 310 (Tex.Civ.App.—El Paso 1936, writ dism'd). "The degree of 'necessity' required to establish an easement by implied grant is merely such as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." Fender v. Schaded, supra 420 S.W.2d at p. 472; 28 C.J.S. Easements § 33, p. 692 (1941). It was stipulated that at the time such lines were laid there was no sewer in the street to the south of the lots involved and that the flow through lot 8 to the sewer in Gregg Street was the most natural and convenient. In its findings of fact the trial court recited that the use of the easement was essential to the use

of the dominant estate at the time of the conveyance by Whitaker and necessary after the severance. We find that the record supports such findings.

■ Finding the essential elements of an implied easement appurtenant it is unnecessary to discuss defendants' points concerning easement by necessity or by prescription. Defendants' points of error directed to the rendition of judgment upon those theories are overruled.

■■ Appellants' points of error urging reversible error because of the trial court's refusal to exclude consideration of the existence and costs of a temporary sewer line across lot 8 (under the temporary injunction) and the court's exclusion of evidence as to an alternate sewer route will be overruled. We do not find that reversible error has been committed by the admission or exclusion of such testimony. This was a trial before the court, in an instance where the issues do not appear to be close and it is not apparent from the record that the evidence influenced the judgment. See Conner v. Parker, 181 S.W. 2d 873 (Tex.Civ.App.—Beaumont 1944, no writ). The reviewing court presumes the trial court considered only the admissible evidence. Rekdahl v. Long, 407 S.W.2d 339 (Tex.Civ.App.—Eastland 1966), aff'd. 417 S.W.2d 387.

■ Finally the appellants urge reversal because the location of the permanent easement granted in the judgment is indefinite and uncertain. The judgment granted a sewer flowage easement through and two and one-half feet on either side of the existing concrete pipe. In light of what has been said in this opinion affirming the trial court's judgment upon the theory of the granting of an implied easement appurtenant the location of the easement is sufficiently apparent and definite. This point of error is overruled.

The judgment of the trial court is affirmed.