**TEXAS CITY DIKE & MARINA, INC.,
et al., Appellants,**

**v.**

**J. T. SIKES, d/b/a Lighted Pleasure
Pier, Appellee.**

No. 16021.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1973.

Rehearing Denied Oct. 25, 1973.

Second Rehearing Denied Nov. 15, 1973.

St. John Garwood, Jr., Edwin L. Kirkpatrick, Houston, Austin, Dabney, Northrop & Garwood, Houston, of counsel, for appellants.

Barrow, Bland, Rehmet & Lee, Gerald T. Drought, Thomas H. Lee, Houston, for appellee.

COLEMAN, Justice.

Texas City Dike Corporation and its parent company, Texas City Dike & Marina, Inc., appeal from a declaratory judgment rendered by the court after a nonjury trial. Appellants complain only of those portions of the judgment which awarded a 5,000 square foot parking easement for appellee's customers and invitees, and a fishing pier on submerged property adjacent thereto, to appellee. The judgment also granted an access easement to appellee to which use appellants offer no objection but maintain that such use should

be limited to purposes of ingress and egress.

Appellants contend that the trial court erred in awarding appellee a parking easement for appellee's customers and invitees outside his sublease boundaries because the undisputed evidence conclusively showed as a matter of law that the requirements for an implied easement, or an easement by estoppel, had not been met, and no express easement had ever been granted, and that the trial court further erred in awarding the pier adjacent to the sublease to appellee, because the undisputed evidence also conclusively showed as a matter of law that his lessor, Texas City Dike Corporation, never held any right therein to lease to him.

It is noted at the outset that neither findings of fact nor conclusions of law appear in the record and in the absence thereof the judgment of the trial court must be upheld on any legal theory which finds support in the evidence. Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup.1968). Furthermore, this court in such case must presume that the trial court found all facts in favor of the judgment which have support in the evidence. Lyford Realty Co. v. Clark, 154 S.W.2d 277 (Tex.Civ.App.—San Antonio 1941, writ ref'd).

On August 23, 1962, Texas City Dike Corporation entered into a lease with a term commencing September 1 of that year and terminating February 29, 1968, wherein the lessee, Sikes, was granted an option to renew and extend the lease for an additional term of twenty years from March 1, 1968 upon giving sixty days' prior written notice of his intention to exercise the option. Sikes, d/b/a Lighted Pleasure Pier Company, was specifically granted the use and occupancy of "the premises hereby let *for the purpose of maintaining a fishing pier and concession stand* . . ." Sikes further agreed "prior to the first day of March, 1963 *to complete the erection, construction and establishment of a fishing pier or tee head together with a suitable adjacent building for use by way of a concession stand upon the premises here by leased and demised* . . ." on penalty of the termination of the lease for failure to do so.

The rental consisted of a stipulated amount to be paid annually in addition to a percentage of Sikes' annual gross income. The lease agreement was actually a sublease under an original lease between the City of Texas City, lessor, and Clyde B. Ragsdale, lessee, dated July 3, 1957. On January 16, 1959, Ragsdale assigned his interest therein to the Texas City Dike Corporation of which Ragsdale was president and principal owner. Texas City Dike & Marina, Inc. purchased all of the stock of Texas City Dike Corporation after Ragsdale's death in 1963.

Formal negotiations between Ragsdale and Sikes leading up to Sikes' sublease commenced in 1962. After several months of preliminary negotiations Ragsdale and Sikes located the premises to be subleased with the use of a 100' tape and marked the center lines thereof with a steel pipe.

Sikes testified over objection that such testimony violated the Statute of Frauds, Statute of Conveyances and Parol Evidence Rule, that he and Ragsdale had discussed the question of customer parking prior to the execution of the sublease and that Ragsdale told him that he was authorized to use an indicated area for customer parking. A running objection was allowed by the court and no express ruling on the objection was announced. The parking area claimed by Sikes was situated directly in front of his building which was located within the subleased portion and on either side of the road which approached his place of business from the south. The testimony of several witnesses corroborated the fact that the described area was customarily used for parking by those driving to the end of the Texas City Dike. A witness, Mr. Boatright, testified that the parking area was very well defined and ". . . There is no grass or anything

on it. You can clearly tell it's a parking area or what could be used for such." It was across this area and portion of the road leading up to Sikes' place of business that the trial court granted the parking easement.

Subsequent to the execution of the sublease Ragsdale and Sikes met on numerous occasions at the leased premises but neither discussed the question of customer parking. Ragsdale did not voice any objection to the fact the Sikes customers were utilizing the area outside of the 100 x 100 foot subleased area for parking. Sikes testified that no one from either Texas City Dike Corporation or Texas City Dike & Marina, Inc. had ever indicated to him prior to the initiation of this lawsuit that customer parking outside his sublease was objectionable.

The Texas City Dike was originally constructed for the purpose of protecting the ship channel leading into Texas City. It is about 5 miles in length. Texas City Dike & Marina, Inc. holds a long term lease from the City of Texas City on a tract consisting of about 26 acres at the tip of the dike. A paved road runs along the dike, but terminates at the 16 acre tract. The 16 acre tract is served by a clay and shell road. The Sikes sublease is several city blocks from the paved road.

After the sublease was executed, and as required by its terms, Mr. Sikes built his concession building and a connecting lighted fishing pier. This construction was financed by a $20,000.00 Small Business Administration loan. In 1969 the pier was destroyed by a storm, and it was rebuilt by Mr. Sikes, who obtained another loan in the amount of $15,000.00. A trailer house is located on the sublease for use as living quarters by employees. By reason of the location and size of the improvements not more than five cars can be parked on the Sikes property. Mr. Sikes has expended his funds in maintaining the road and parking area. He purchased and used machinery and shell for that purpose. Mr.

Sikes also drilled a water well on the premises as required by the lease.

On November 16, 1962, the Army Corps of Engineers issued a permit to Texas City Dike Corporation allowing the construction of what is described as a wharf. A drawing attached shows a 20' by 40' "Entrance Building and Concession" and a pier having a total length of 900 feet. By an addenda to the sublease the parties agreed that such lease was contingent "to the issuance of necessary permits for the construction of a fishing pier and concession building by the U.S. Army Corps of Engineers, Galveston District . . ."

The original sublease expired by its terms on March 1, 1968, unless the option to extend for an additional twenty years was exercised. Mr. Sikes gave notice of his intention to extend the term of his lease, and Texas City Dike & Marina, Inc. informed him that the sublease was terminated by reason of a breach of certain terms thereof, and refused to grant the extension of the lease or to accept further rental payments. This suit resulted.

■ There is evidence of representations by the lessor of the availability of a parking area, which were communicated to lessee and of long continued usage of a particular area for such purpose. The use of this area for parking was known to the lessor and he made no objection. It is a reasonable inference from the evidence that the lessee relied on the representations concerning the availability of the designated area for parking in entering into the lease agreement and constructing improvements on the leased premises. A lighted fishing pier was the principal attraction. It was located five miles from the mainland. Customers would be expected to arrive by automobile. A parking area was necessary to the success of the business. While the funds expended on the parking area appear to have been relatively small, considerable sums were expended to improve and maintain the leased premises.

The judgment of the trial court can be sustained under the doctrine of estoppel in pais. Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196 (Tex.1962); Mote v. Boyd, 116 Tex. 82, 286 S.W. 458 (1926); North Clear Lake Development Corp. v. Blackstock, 450 S.W.2d 678 (Tex.Civ.App.—Houston [14th] 1970, err. ref. n. r. e.); Doss v. Blackstock, 466 S.W.2d 59 (Tex. Civ.App.—Austin 1971, err. ref. n. r. e.); Carleton v. Dierks, 203 S.W.2d 552 (Tex. Civ.App.—Austin 1947, err. ref. n. r. e.).

The lessor contends that the trial court erred "in awarding the pier adjacent to the sub-lease to the lessee, because the undisputed evidence conclusively showed as a matter of law that his lessor, Texas City Dike Corporation, never held any right in it to lease to him."

At the time Texas City Dike Corporation leased the 100′ by 100′ tract to Sikes, title to two-thirds of that tract and the submerged land over which the pier was constructed was in the State. Thereafter Texas City Dike & Marina, Inc. acquired all stock of Texas City Dike Corporation. In 1963 the City of Texas City acquired from the State of Texas title to the remaining portion of the Dike and the submerged land over which the fishing pier was constructed. The City then entered into an agreement with Texas City Dike & Marina, Inc. amending the previous lease to include additional property including that in question.

We construe the sublease to include the fishing pier to be constructed as part of the leased premises. The construction of the pier was required by the lease, the permits for such construction were to be secured in the name of the lessor, the revenue derived from its use was included in gross revenue on which rental was calculated. On April 12, 1966 Texas City Dike & Marina, Inc., executed a letter agreement with Sikes under the terms of which Sikes was to build an addition to the pier. The letter stated: "This supplements the existing lease between Texas City Dike & Marina, Inc. and J. T. Sikes and in no other way changes the terms and conditions of said lease agreement otherwise." On June 1, 1966, an application for a new permit for the addition to the pier was made in the name of Texas City Dike & Marina, Inc. A plan accompanied the application showing the proposed pier, the old pier and the 100′ by 100′ land area leased to Sikes. The application was denied, and the proposed pier was not constructed.

■■■ One may make a valid lease of property to another despite the fact that the title to the property is in a third person if the lessor has lawful possession of the property. Matthews v. First State Bank of Richland, 250 S.W. 460 (Tex.Civ.App.—Dallas 1923). A lease, void as to the owner of the leased property, can be ratified by the owner's recognition of the validity of the lease in writing. Humble Oil & Refining Co. v. Jeffrey, 38 S.W.2d 374 (Tex. Civ.App.), aff'd 55 S.W.2d 521 (Tex.Com. App.1932); Simmons v. Clampitt Paper Co., 223 S.W.2d 792 (Tex.Civ.App.—Dallas 1949, err. ref. n. r. e.).

In Hastings v. Pichinson, 370 S.W.2d 1 (Tex.Civ.App.1963), the court said: " . . . The principle has been applied to revive deeds which were wholly inoperative as to non-joining homestead owners. The subsequent execution of a formal document even to a third person which expressly recognized in clear language the validity of the lifeless deed or lease has been held to give it life. . . ."

■■■ The fact that title to a portion of the leased premises was in a third party at the time the sublease was made does not show as a matter of law that the sublease was void. In any event after title was acquired by the lessor, he acknowledged the validity of the lease in writing and continued to accept rentals referable to the lease.

Affirmed.

EVANS, Justice (concurring).

In this case there was more than mere permissive use of the additional parking area by Sikes' customers. As Sikes expanded his business the use of the additional parking area became increasingly valuable to him. Appellants, with knowledge of such use, accepted rentals based on revenues received from Sikes' customers and their reversionary estate was benefited by Sikes' improvement of his leasehold.

There was evidence in the record from which the trial court could have inferred that appellants by their conduct led Sikes to believe he had user rights and knowingly accepted the benefits of his actions in reliance on such belief. The facts of this case bring it within that "narrow band of cases" mentioned in Drye v. Eagle Rock Ranch Company, 364 S.W.2d 196 (Tex. Sup.1962), wherein an easement by estoppel must be created, in equity, to prevent injustice. See Lange, Texas Practice, Vol. 4, Sec. 377, p. 149. The statements of Chief Justice Tunks in North Clear Lake Development Corporation v. Blackstock, 450 S.W.2d 678 (Tex.Civ.App., Houston, 14th, 1970, writ ref., n. r. e.), are applicable here:

"The application of the principles of equitable estoppel, where permissible, is made to prevent an injustice that would result from the strict application of the unbending rules of law. Each case in which equitable estoppel is sought to be applied must rest upon its own facts. Barfield v. Howard M. Smith Company of Amarillo (Tex.Sup.Ct.), 426 S.W.2d 834. The facts of this case permit the application of equitable estoppel by which the appellant will not be heard to deny the existence of the easements claimed by appellees. The denial of such application would result in disproportionate injustice to appellees."

On the particular facts of this case I concur in the opinion of the majority affirming the trial court's judgment.

## ON MOTION FOR REHEARING

■ In appellant's fifth point on motion for rehearing it is argued that the evidence established, as a matter of law, that the location of the parking area was so indefinite as to form no basis for establishment of a parking easement. The evidence showed that a portion of the dike leading up to Sikes' leasehold from the south was shelled and used for parking purposes by Sikes' customers. The trial court's judgment specifically described such area as two rectangular tracts on either side of the access roadway which it defined as "a reasonable area for parking available to the customers of the leasehold business." The trial court, having determined appellant's right to a parking easement by estoppel, was empowered in its equity jurisdiction, to fix and establish an exact location of the parking area which would be reasonably sufficient for the accomplishment of the purposes intended. Westbrook v. Wright, 477 S.W.2d 663 (Tex.Civ.App.— Houston, 14th, 1972, no writ hist.); Lange, Texas Practice, Vol. 384, p. 173; 28 C.J.S. Easements § 83, p. 762.

We have carefully considered appellant's other points raised in its motion for rehearing and they are overruled.

Appellant's motion for rehearing is overruled.