Reversed and Remanded and Opinion filed August 31, 2006








Reversed
and Remanded and Opinion filed August 31, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01089-CV

____________

 

2616 SOUTH LOOP L.L.C.

AND 

2616 SOUTH LOOP BUILDING, L.P., Appellants

 

V.

 

HEALTH SOURCE HOME CARE, INC.

AND 

ARUNEE PINWATANA, Appellees

 



 

On Appeal from the County
Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 788,130

 



 

O P I N I O N








In this landlord-tenant dispute, appellees Health Source
Home Care, Inc. and Arunee Pinwatana d/b/a Atrium Deli (collectively, Athe Tenants@) filed suit
against appellants 2616 South Loop, L.L.C. and 2616 South Loop Building, L.P.
(collectively, Athe South Loop Companies@) seeking a
declaratory judgment construing their leases, damages for breach of contract,
attorneys= fees, and interest.  The South Loop Companies denied
that the leases were enforceable, asserted alternative counterclaims for breach
of contract or quantum meruit damages, and also sought declaratory relief. 
After a non-jury trial, the trial court dismissed the South Loop Companies= counterclaims,
entered judgment in favor of the Tenants for actual damages, attorneys= fees, and interest,
and issued findings of fact and conclusions of law.  We hold the leases do not
bind the South Loop Companies, and therefore reverse and remand this cause for
further proceedings consistent with this opinion.

I.  Factual and Procedural Background

The Tenants leased office space in a building located at
2616 South Loop (Athe Property@) in Houston,
Texas.  Health Source contracted to lease a suite on the Property through
December 31, 2003, and Pinwatana contracted to lease space through January 3,
2008.[1] 
Both leases identify Quad Atrium Realty as the lessor, and contain provisions
requiring that all notices to the lessor be sent to Quad Atrium Realty at its
offices on the Property.  The leases were signed by D.H. Virani, who was
identified in the leases as the property manager for Quad Atrium Realty. 
However, at the time the Tenants signed their respective leases, the Property
was owned by Quad Atrium Group Limited Partnership (AQuad L.P.@).

In June 2002, Boxer Property Management Corporation (ABoxer@), the agent of 
2616 South Loop, L.L.C. (ASouth Loop L.L.C.@), negotiated the
purchase of the Property by Boxer or its assignee.  Boxer assigned the purchase
and sale agreement to South Loop L.L.C., and after South Loop L.L.C. completed
the purchase, Boxer managed the Property.  








The day after the sale, Boxer notified the Tenants that
South Loop L.L.C. now owned the Property, and informed the Tenants that their Amonth-to-month@ leases were terminated
Aeffective
immediately.@  The Tenants were also told they had thirty days to
vacate the Property unless they entered into new leases with Boxer.  Boxer
subsequently sent the Tenants notices of default, demands for payment of
increased rent, and demands that they vacate the Property.  Both Tenants
insisted they had valid leases and refused to vacate.

In December 2002, South Loop L.L.C. sold the Property to
2616 South Loop Building, L.P. (ASouth Loop
Building@). Although it no
longer held title to the Property, South Loop L.L.C. filed separate forcible
detainer actions in a Harris County justice court against Health Source and
Pinwatana[2]. 
The justice court found in favor of the Tenants, but ruled that the Tenants
were not entitled to recover damages or attorneys= fees.  None of
the parties appealed the justice court=s judgment.








One week after the justice court ruled, the Tenants filed
the present suit against South Loop L.L.C. in Harris County Civil Court at Law
No. 2.  The Tenants sought a declaratory judgment that South Loop L.L.C. and
South Loop Building are bound by the leases and that the Tenants are not in
default.  In addition, the Tenants sought damages for breach of contract and
wrongful eviction, attorneys= fees, and interest.  The Tenants
subsequently added South Loop Building as a defendant, and alleged that South
Loop Building was Athe mere continuation or alter ego of
[South Loop L.L.C.].@  The Tenants asked the trial court to
impose South Loop L.L.C.=s liability on South Loop Building, or
alternatively, to find that South Loop Building had assumed the liabilities of
South Loop L.L.C.  Both South Loop L.L.C. and South Loop Building denied the
enforceability of the Tenants= written leases, and asserted
counterclaims for quantum meruit damages and declaratory relief.  South Loop
L.L.C. and South Loop Building also asserted alternative claims for breach of
contract, contending that (a) Heath Source breached its lease by
overstaying the lease period without paying specified Aholdover@ rent, and (b)
Pinwatana breached her lease by operating a deli on the leased premises in
violation of a contract provision requiring that the area be used only as
office space. 

The trial court entered a judgment in favor of the Tenants,
dismissed the South Loop Companies= counterclaims,
and issued fifteen findings of fact and six conclusions of law.  In its
conclusions of law, the trial court found: (1) Athe leases are
valid and binding on the parties@; (2) South
Loop L.L.C. breached the leases with the Tenants Aby attempting to
terminate the subject leases and by filing the eviction proceedings@; (3) the
Tenants Aare not in default
on the terms of their respective leases@; and (4) South
Loop L.L.C.=s Aaction of filing the eviction proceeding
against [the Tenants] was a violation of the terms of the subject leases.@  The trial court
also found the Tenants had Aincurred damages resulting from the
Defendant=s eviction proceeding in the total amount of
$2,248.17, which takes into consideration the attorneys= fees incurred due
to the eviction proceeding.@  Thus, in addition to attorneys= fees for the
instant suit, the trial court awarded Health Source and Pinwatana $2,248.17
each in actual damages together with prejudgment interest.[3] 


II.  Issues Presented








In seven issues, the South Loop Companies challenge the
legal and factual sufficiency of the evidence supporting: (1) the trial court=s Aimplicit@ finding that the
leases were conveyed to the South Loop Companies; (2) the trial court=s finding that the
South Loop Companies breached the Tenants= covenant of
peaceful and quiet enjoyment of the leased premises; (3) the trial court=s finding that the
leases were valid and binding on the parties; (4) the trial court=s failure to find
that the Tenants are in breach of the leases; (5) the trial court=s award of
attorneys= fees from the forcible detainer action as actual
damages in the present action; (6) the trial court=s Aimplicit@ finding that
South Loop L.L.C.=s liabilities were transferred to or
assumed by South Loop Building; and (7) the trial court=s dismissal of the
Landlord=s quantum meruit
claims.

III.  Standards
of Review

A.      Findings of Fact

In reviewing a trial court=s findings of fact
for legal and factual sufficiency of the evidence, we apply the same standards
we apply in reviewing the evidence supporting a jury=s answer.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  When the appellate record
contains a reporter=s record, as it does in this case,
findings of fact are not conclusive on appeal if a contrary fact is established
as a matter of law or if there is no evidence to support the finding.  See
Material P=ships, Inc. v. Ventura, 102 S.W.3d 252,
257 (Tex. App.CHouston [14th Dist.] 2003, pet denied).  

1.       Legal
Sufficiency








When conducting a legal sufficiency review, we credit
evidence supporting the judgment if reasonable jurors could, and disregard
contrary evidence unless reasonable jurors could not.  City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We may sustain a legal
sufficiency, or no‑evidence, point if the record reveals one of the
following: (1) the complete absence of a vital fact; (2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital
fact is no more than a scintilla; or (4) the evidence established
conclusively the opposite of the vital fact.  See Uniroyal Goodrich Tire Co.
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998).  If more than a scintilla of
evidence exists, it is legally sufficient.  Lee Lewis Constr. Co. v.
Harrison, 70 S.W.3d 778, 782 (Tex. 2001).  More than a scintilla of
evidence exists if the evidence furnishes some reasonable basis for differing conclusions
by reasonable minds about a vital fact=s existence.  Id.
at 782B83.

2.       Factual
Sufficiency

When conducting a factual sufficiency review, we consider
all of the evidence to determine if the finding is so weak or if the evidence
to the contrary is so overwhelming that it should be set aside and a new trial
ordered.  Burlington N. & Santa Fe Ry. v. S. Plains Switching, Ltd.,
174 S.W.3d 348, 354  (Tex. App.CFort Worth 2005, pet. denied).  Findings
may be overturned only if they are so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).  An appellate court must also
clearly state why the trial court=s finding is
factually insufficient or is so against the great weight and preponderance as
to be manifestly unjust.  See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996) (per curiam).

B.      Conclusions of Law

We review the trial court=s conclusions of
law de novo.  Smith v. Smith, 22 S.W.3d 140, 149 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  When performing a de novo review, the reviewing court
exercises its own judgment and redetermines each legal issue.  Quick v. City
of Austin, 7 S.W.3d 109, 116 (Tex. 1998).  We will uphold conclusions of
law on appeal if the judgment can be sustained on any legal theory the evidence
supports.  Waggoner v. Morrow, 932 S.W.2d 627, 631 (Tex. App.CHouston [14th
Dist.] 1996, no writ).  Incorrect conclusions of law do not require reversal if
the controlling findings of fact support the judgment under a correct legal
theory.  Id.        








IV.  Analysis

In their third issue, the South Loop Companies challenge
the trial court=s conclusion that the parties are bound by
valid leases.  Because this issue is potentially dispositive, we begin by
reviewing this conclusion of law and the relevant findings of fact that support
the conclusion. 

A.      The Leases Do Not Bind the South Loop Companies.








The trial court=s legal conclusion
that Athe subject leases
are valid and binding on the parties . . .@ is a controlling
issue of law, and rests on the trial court=s factual findings
that (a) Quad Atrium Realty executed the leases Aas [the] duly
authorized agent@ for the Property=s owner, Quad
L.P.; (b) the South Loop Companies assumed the leases with the purchase of the
Property; and (c) South Loop L.L.C. conveyed the leases to South Loop
Building.[4] 
According to the South Loop Companies, the evidence at trial established that
the leases were not executed on behalf of Quad L.P., but were instead executed
by D.H. Virani as property manager for Quad Atrium Realty.  The South Loop
Companies further contend there is no evidence that Virani or Quad Atrium
Realty were authorized to act on behalf of Quad L.P.  In addition, the South
Loop Companies argue there is no evidence the leases were conveyed to or
assumed by Quad L.P. or its successors in interest, the South Loop Companies. 
Thus, the South Loop Companies contend the leases do not bind them because the
leases were not conveyed in accordance with the Statute of Conveyances and the
Statute of Frauds.  Specifically, the Statute of Conveyances requires that Aa conveyance of an
. . . estate for more than one year, in land and tenements, must be in writing
and must be subscribed and delivered by the conveyor or by the conveyor=s agent authorized
in writing.@  Tex. Prop.
Code ' 5.021 (Vernon 2004).  Its contract law counterpart,
the Statute of Frauds, requires a lease of real estate for a term of longer
than one year to be in writing and Asigned by the
person to be charged with the promise . . . or by someone lawfully authorized
to sign for him.@  Tex.
Bus. & Com. Code ' 26.01(a)(2) (Vernon Supp. 2005).

A lessor may validly lease property to another, despite the
fact that the title to the property is in a third person, if the lessor
lawfully possesses the property.  Texas City Dike & Marina, Inc. v.
Sikes, 500 S.W.2d 953, 956 (Tex. Civ. App.CHouston [1st
Dist.] 1973, writ ref=d n.r.e.) (holding that lessor was
estopped to deny that lessee leased a parking area where the lessor did not
hold title to the property at the inception of the lease but the landowner
acknowledged the existence of the lease in writing, and the lessor subsequently
acquired title, acknowledged the validity of the lease in writing, and
continued to accept rental payments).[5] 
In such a case, the lessee may enforce the lease against the lessor.  See
Simmons v. Clampitt Paper Co., 223 S.W.2d  792, 799 (Tex. Civ. App.CDallas 1949, writ
ref=d n.r.e.) (AIf the title to
the leased property was not in [lessor] at the time the lease was made,
[lessor] was and is liable to the [lessee] for any loss it might sustain by
reason of being dispossessed, because of his lack of title, by any third
person.@).  But, this does
not necessarily mean that the lessee can enforce the lease against the property
owner.  Although the lessee Amay have had a subjective, good faith
belief@ that the lessor
was the owner or an agent of the owner, this is not enough to create an agency
relationship between the lessor and the property owner that binds the owner to
the lessor=s agreement.  See Coker v. Cramer Fin. Group, Inc.,
992 S.W.2d 586, 595 (Tex. App.CTexarkana 1999, no pet.).  In the absence
of the owner=s ratification of the lease or the lessor=s actual or
apparent authority to act on the owner=s behalf, there is
no basis on which to enforce the lease against the property owner. 








Here, the Tenants failed to produce any document in which
Quad L.P. authorized Virani or Quad Atrium Realty to execute the leases on Quad
L.P.=s behalf, instead
arguing, AIt is an obvious proposition that when [the South Loop
Companies] purchased the Property, [their] purchase was subject to the existing
leases of the Property.@  This contention presupposes that the
leases were binding on the prior owner of the property, Quad L.P., and were
conveyed to South Loop L.L.C. at the time of purchase.  The Tenants apparently
presume that Quad Atrium Realty had actual or apparent authority to execute the
leases on behalf of Quad L.P.; alternatively, the Tenants presume Quad L.P.
ratified the leases.  

Actual authority includes both express and implied
authority and usually denotes the authority a principal (1) intentionally
confers upon an agent, (2) intentionally allows the agent to believe he
possesses, or (3) by want of due care allows the agent to believe he
possesses.  Coker v. Cramer Fin. Group, Inc., 992 S.W.2d 586, 594 (Tex.
App.CTexarkana 1999, no
pet.).  Here, the Tenants presented no evidence that Quad L.P. authorized
Virani or Quad Atrium RealtyCorally, in writing, or through a want of
due careCto act as its
agents.  Thus, there is no support for the Tenant=s presumption that
Quad Atrium Realty or Virani had actual authority to bind Quad L.P.  








The essential elements required to establish apparent
authority are: (1) a reasonable belief in the agent=s authority; (2)
 generated by some holding out or neglect of the principal; and
(3) justifiable reliance on the authority.  Garza v. Williams Bros.
Constr. Co ., Inc., 879 S.W.2d 290, 294 (Tex. App.CHouston [14th
Dist.] 1994, no writ).  A court may consider only the conduct of the principal
leading a third party to believe that the agent has authority in determining
whether an agent has apparent authority.  NationsBank, N.A. v. Dilling,
922 S.W.2d 950, 953 (Tex. 1996).  AThe principal must
have affirmatively held out the agent as possessing the authority or must have
knowingly and voluntarily permitted the agent to act in an unauthorized manner.@  Id.  In
this case, the Tenants presented no evidence that Quad L.P. affirmatively
represented that Quad Atrium Realty or Virani were its agents, or that Quad
L.P. knowingly and voluntarily permitted them to act in an unauthorized manner.
In support of their presumption that Quad L.P. authorized or ratified the
leases executed by Quad Atrium Realty, the Tenants rely on three documents and
one assertion.

First, the Tenants point out that the deed conveying the
Property to South Loop L.L.C. states that the conveyance is subject to  the A[r]ights of
tenants in possession, as tenants only, under unrecorded lease agreements.@  This language,
however, merely states that the Property is conveyed to South Loop L.L.C.
subject to the rights of the Tenants as set forth in the leases.  The language
does not change the fact that the leases continue to define the Tenants= rights.  Although
the Tenants= argument presupposes that the leases convey rights to
the Tenants that are enforceable against Quad L.P., neither the leases nor the
deed perform an essential step necessary to bind Quad L.P. in that the
documents do not (a) acknowledge Quad Atrium Realty or Virani as Quad L.P.=s agent, (b)
acknowledge that the leases were executed by Virani and Quad Atrium Realty on
Quad L.P.=s behalf, (c) ratify the leases, or (d) assign the
leases to Quad L.P.  See Texas City Dike & Marina, Inc. v. Sikes,
500 S.W.2d 953, 956 (Tex. Civ. App.CDallas 1973, writ
ref=d n.r.e.) (holding
that lessor was estopped to deny that lessee leased a parking area where the
lessor did not hold title to the property at the inception of the lease but the
landowner acknowledged the existence of the lease in writing, and the lessor subsequently
acquired title, acknowledged the validity of the lease in writing, and
continued to accept rental payments, thereby ratifying the lease).  Hence, any
rights that the Tenants possess under the leases may be asserted against Quad
Atrium Realty, but not against Quad L.P.  See Simmons, 223 S.W.2d at
799. 

The Tenants next point out that Quad L.P. and South Loop
L.L.C. executed an AAssignment and Assumption of Tenant Leases@ in which Quad
L.P. states A[Quad L.P.] is the owner of the lessor=s interest in
those certain leases . . . identified on Exhibit >B=@ and assigns the
leases to South Loop L.L.C.  However, as the Tenants concede, no Exhibit >B= was attached to
the Assignment.

The Tenants also argue that:








[the South Loop Companies] have
relied on a rent roll created by Quad Atrium Realty as a basis for determining
the status of existing leases at the Property which was introduced and
testified about at trial.  This clearly shows that [the South Loop Companies]
did in fact recognize Quad Atrium Realty as an authorized agent for [Quad
L.P.]  

The Arent roll@ is a spreadsheet
bearing the heading AQuad Atrium Realty Rent Roll As On
5-31-2002.@  It indicates that Pinwatana has a month-to-month
lease[6]
and Health Source=s lease expires on May 31, 2002.  But, the
document makes no reference to Quad L.P.








Finally, the Tenants contend Quad Atrium Realty is Quad
L.P.=s general partner,
and thus, was authorized to and did bind Quad L.P. to the leases.  However, no
evidence was introduced at trial in support of this argument.  The Assignment
states that AQuad Atrium Corp.@ is Quad L.P.=s Asole general
partner,@ and the deed
identifies AQuad Atrium Realty Corporation@ as Quad L.P.=s Ageneral partner.@  Thus, the record
contains conflicting evidence of the name of the general partner, but contains
no evidence that Quad Atrium Realty is the same entity as AQuad Atrium Corp.@ or AQuad Atrium Realty
Corporation.@  Even assuming that Quad Atrium Realty is the general
partner in Quad L.P., the leases do not indicate that Quad Atrium Realty
executed the leases on behalf of the partnership, rather than on its own
behalf.  See First State Bank of Riesel v. Dyer, 151 Tex. 650, 653, 254
S.W.2d 92, 94 (Tex. 1953) (A>A partnership may
be held responsible for obligations executed in the name of an individual
partner where such name has been adopted as the firm name or where the partners
have consented to use of his name in partnership matters; but use of an
individual name raises a presumption that the transaction is an individual and
not a firm matter.=@) (quoting 68
C.J.S., Partnership, s 147b, p. 582); 57
Tex. Jur. 3d Partnership ' 102 (1997) (AEvery partner is
an agent of the partnership for purpose of its business; and the act of every
partner, including the execution in the partnership name of any
instrument, for apparently carrying on in the usual way the business of the
partnership, binds the partnership, unless the partner so acting has in fact no
authority to act for the partnership in the particular matter, and the person
with whom he is dealing has knowledge of the lack of authority.@) (emphasis
added).

We conclude that there is no evidence that Quad L.P.
assigned the leases executed by Quad Atrium Realty to the South Loop
Companies.  The leases identify Quad Atrium Realty as the lessor, and contain
no reference to Quad L.P.  The Tenants endorsed their rent payment checks to
Quad Atrium Realty, rather than to Quad L.P, and delivered them to Virani, the
property manager for Quad Atrium Realty.  The Tenants produced no evidence that
Quad L.P. authorized Virani or Quad Atrium Realty to act as its agent. 
Moreover, the Tenants presented no evidence that Quad Atrium Realty executed
the leases on behalf of Quad L.P., rather than on its own behalf.  Finally,
there is no evidence that Quad Atrium Realty conveyed or assigned the Tenants= leases to Quad
L.P.  In the absence of evidence that (a) Virani and Quad Atrium Realty
were Quad L.P.=s authorized agents, (b) Virani and Quad Atrium Realty
executed the leases on behalf Quad L.P., or (c) Quad L.P. or its authorized
agents conveyed or assigned the leases to the South Loop Companies, the trial
court erred in concluding the leases were valid and binding on the South Loop
Companies. 

We sustain the South Loop Companies= first and third
issues. 

B.      The South Loop Companies Are Not Liable to the
Tenants

Our conclusion that the leases do not bind the South Loop
Companies dictates our resolution of the South Loop Companies= remaining
issues.  








In their second issue, the South Loop Companies challenge
the trial court=s finding that they breached the Tenants= covenant of
peaceful and quiet enjoyment of the leased premises.  Because the written
leases do not bind the South Loop Companies, there is no evidence to support
the trial court=s finding that the South Loop Companies
breached the leases.[7] 
Thus, we sustain the South Loop Companies= second issue.   

In their fourth issue, the South Loop Companies claim the
trial court erred in failing to find that the Tenants breached specific
provisions of their respective leases.  Having concluded that the leases are
not binding, we must also conclude the trial court did not err in failing to
find the Tenants breached the leases.  We overrule the South Loop Companies= fourth issue.   








The South Loop Companies argue in their fifth issue that
the trial court erred in awarding the Tenants the attorneys= fees incurred in
the forcible detainer action as actual damages in the present action because
(a) the leases are not binding; (b) if the leases are binding, the South Loop
Companies did not breach the leases by filing the forcible detainer action;[8]
(c) the Tenants= attempt to recover attorneys= fees incurred in
the forcible detainer action constitutes an impermissible collateral attack on
the judgment of the justice court; and (d) the Tenants= claim for prior
attorneys= fees is barred by res judicata.  Because we have
concluded the leases are not binding, the South Loop Companies did not breach
the leases, and therefore, the Tenants are not entitled to recover actual
damages.[9] 
We sustain the South Loop Companies= fifth issue, and
reverse the trial court=s award of actual damages and interest. 

In their sixth issue, the South Loop Companies argue the
trial court Aerred when it implicitly found that any liabilities of
[South Loop L.L.C.] were transferred or assumed by [South Loop Building]@ because the
evidence is factually and legally insufficient to support such a finding. 
Although the Tenants allege that South Loop Building is the alter ego of South
Loop L.L.C., the trial court made no findings of fact or conclusions of law
regarding the alter ego claim.  Nevertheless, the trial court found that South
Loop L.L.C. Aconveyed the subject [B]uilding and leases to [South
Loop Building]@ and concluded that Athe subject leases
are valid and binding on the parties including [South Loop Building].@  Moreover, the
trial court entered judgment against both South Loop Companies.  Because we
conclude the leases are not enforceable against the South Loop Companies, we
necessarily conclude that the South Loop Companies are not liable to the
Tenants for the alleged breach of the leases.[10]  
We therefore sustain the South Loop Companies= sixth issue.

C.      The South
Loop Companies= Quantum Meruit Counterclaim








In their last issue, the South Loop Companies contend the
trial court erred in dismissing the South Loop Companies= counterclaims for
quantum meruit.  The trial court found the Tenants Ahave paid all the
rent owed under the terms of the respective leases.@ (emphasis
added).  But, because there is no express agreement between the parties, the
amount the Tenants owe to the South Loop Companies is determined by quantum
meruit, rather than the terms of the non-binding leases.  See Heldenfels
Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992) (AQuantum meruit is
an equitable theory of recovery which is based on an implied agreement
to pay for benefits received.@) (emphasis added).

To recover under quantum meruit, the claimant must
establish that (1) valuable services were rendered or materials furnished;
(2) to the party sought to be charged; (3) which were accepted by the
party sought to be charged; and (4) under circumstances that reasonably notified
the recipient that the claimant expected to be paid for the services or
materials.  Id.  The evidence is uncontroverted that the Tenants
received and accepted the use of the Property and received written demands for
payment of market rental rates in return.  The South Loop Companies also
presented evidence that the Tenants paid rent at less than the market rate;
however, the trial court found the written leases to be binding, and therefore
dismissed the South Loop Companies= counterclaim
without determining the reasonable rental value of the leased premises.  See
Hudson v. Cooper, 162 S.W.3d 685, 688 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (AThe measure of recovery for quantum meruit
is the reasonable value of the services.@).

Because the South Loop Companies presented evidence on all
elements necessary to sustain their quantum meruit claim, and because the parties
are not bound by the rental value stated in the leases, the trial court erred
in dismissing the South Loop Companies= counterclaim. 
Thus, we sustain the South Loop Companies= seventh issue,
reverse the judgment dismissing the South Loop Companies= counterclaim, and
remand the case.[11]








V.  Conclusion

We hold the evidence is legally insufficient to support the
following findings of fact and their corollary conclusions of law: (1) the
leases were executed by a duly authorized agent of the Property owner;
(2) the leases were conveyed to the South Loop Companies; (3) the
leases are valid and enforceable agreements assumed by the South Loop Companies
with the purchase of the Property; (4) the leases are valid and
enforceable against the South Loop Companies; (5) the Tenants incurred damages
resulting from the forcible detainer action; (6) South Loop L.L.C.
breached the leases by attempting to terminate the leases and by filing the
forcible detainer action; and (7) the Tenants are entitled to recover
actual damages and interest.  We further hold the trial court erred in
dismissing the South Loop Companies= claims to recover
the value of the leased premises in quantum meruit.  

We reverse the trial court=s judgment and
remand this cause for further proceedings consistent with this opinion.

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment rendered and Opinion filed
August 31, 2006.

Panel consists of Justices Fowler,
Edelman, and Guzman.









[1]  The lease identifies AAtrium Deli@ as the lessee, and Pinwatana as the owner of Atrium
Deli.





[2]  The forcible detainer action against Pinwatana was
brought against her business name, Atrium Deli.





[3]  The Tenants requested attorneys= fees for prosecuting this suit pursuant to Chapters
37 and 38 of the Civil Practice and Remedies Code, but the judgment does not
identify the provision under which the award was made.  Although the South Loop
Companies contend the Tenants failed to meet the presentment requirements of Tex. Civ. Prac. & Rem. Code Ann. ' 38.002 (Vernon 1997), it is not clear if this
argument is intended to encompass all the attorneys= fees awarded by the trial court, or only the
attorneys= fees incurred in the forcible detainer action.  The
South Loop Companies do not contend the trial court abused its discretion in
awarding the fees as permitted by Tex.
Civ. Prac. & Rem. Code Ann. '
37.009 (Vernon 1997) (AIn any proceeding under this chapter, the court may
award costs and reasonable and necessary attorney=s fees as are equitable and just.@). 
However, the trial court=s award of attorneys= fees may be reconsidered on remand in light of our holding today.  See
Cole Chem. & Distrib., Inc. v. Gowing, No. 14-03-01092-CV, BS.W.3dB, 2005 WL
692202, at *4 (Tex. App.CHouston [14th Dist.] March 15, 2005, no pet.)
(remanding for reconsideration of attorneys=
fees because the appellate court=s
disposition substantially altered the amount of prevailing party=s recovery).





[4]  The South Loop Companies challenge these factual
findings in their first issue.  Specifically, the South Loop Companies argue
that Athe court=s
ruling that support [sic] [the Tenants=]
claims that the purported leases were conveyed to [the South Loop Companies] is
legally and factually insufficient.@ 





[5]  None of the parties presented evidence showing
whether Quad Atrium Realty lawfully possessed the Property.





[6]  The rent roll contains columns labeled ATenant,@ ASuite No.,@ ASq. Ft.,@ AExpires,@ ASecurity Deposit,@
and ARent.@  Where AAtrium Deli@ is
identified in the ATenant@ column, the
entry AM/M@ appears in the
AExpires@
column.





[7]  A breach of the covenant of quiet enjoyment requires
an eviction, actual or constructive, brought about by the acts of the landlord,
those acting for the landlord, or those acting with the landlord=s permission.  Holmes v. P.K. Pipe & Tubing,
Inc., 856 S.W.2d 530, 539 (Tex. App.CHouston
[1st Dist.] 1993, no writ); see also Lazell v. Stone, 123 S.W.3d
6, 12 n.1 (Tex. App.CHouston [1st Dist.] 2003, pet. denied) (AThe elements of a breach of the warranty of quiet
enjoyment are the same as the elements in a constructive eviction claim.@).  The essential elements of constructive eviction
are: (1) an intention on the part of the landlord that the tenant shall no
longer enjoy the premises; (2) a material act by the landlord that
substantially interferes with the tenant=s
intended use and enjoyment of the premises; (3) the act permanently
deprives the tenant of the use and enjoyment of the premises; and (4) the
tenant abandons the premises within a reasonable time after the commission of
the act.  Holmes, 856 S.W.2d at 539.  Here, no evidence was presented
that the South Loop Companies deprived the Tenants of the use and enjoyment of
the premises or that the Tenants abandoned the Property.  To the contrary, the
uncontroverted evidence establishes that Health Source remained on the premises
even after the lease would have expired by its own terms, and there is no
evidence that Atrium Deli ever abandoned the premises.  





[8]  The trial court did not identify the provision of
the leases that prohibited the South Loop Companies from filing a forcible
detainer action or attempting to terminate the leases; however, all parties
argue the trial court found the South Loop Companies breached a covenant of
quiet enjoyment. 

 





[9]  We do not imply that if there had been a breach, the
Tenants could recover the attorneys=
fees from the forcible detainer action as actual damages in this suit.  The
South Loop Companies are correct that the Tenants= efforts to recover those fees are an impermissible collateral attack
on the prior judgment, and recovery is now barred by res judicata.  See
Neller v. Kirschke, 922 S.W.2d 182, 185B86
(Tex. App.CHouston [1st Dist.] 1995, writ denied); but see
Shotwell v. Crier, 216 S.W. 262, 263 (Tex. Civ. App.CFort Worth 1919, writ dismissed w.o.j.) (holding that
party to a forcible detainer action who did not seek recovery of attorneys= fees and expenses could recover those costs in a
subsequent suit). 





[10]  As previously discussed, however, the Tenants
presented no evidence that the leases were conveyed from Quad Atrium Realty to
Quad L.P.; from Quad Atrium Realty or Quad L.P. to South Loop L.L.C.; or from
any of these entities to South Loop Building.  





[11]  We do not imply that the reasonable value of the
leased premises exceeds the rent paid by the Tenants; rather, we remand the
case to the trial court to make this factual determination.